**The People of the State of Illinois, Plaintiff-Appellee, v. Edwin Brancztet, Defendant-Appellant.**

Gen. No. 50,050.

First District, Third Division.

May 13, 1965.

Kranzler & Kranzler, of Chicago (George A. Kranzler, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph A. Malek, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Edwin Brancztet was found guilty of burglary in a nonjury trial and was sentenced to the penitentiary for a term of not less than ten years and not more than fifty years.

To reverse his conviction he contends that (1) he did not waive a jury trial of his own volition; (2) the evidence did not establish his guilt beyond a reasonable doubt; (3) his constitutional rights were violated by an unlawful search and seizure; (4) certain exhibits of the State were erroneously admitted into evidence and (5) he was deprived of his civil rights by an excessive sentence.

 There is nothing in the record which supports the contention of the defendant that he was induced to waive a jury trial or that the decision was made for him by his counsel. The pertinent portion of the record is as follows:

"The Court: Edwin Brancztet, your attorney indicated this was going to be a jury waiver and a bench trial.
A. Yes.
Q. You understand that under the law you have the right to a jury trial?
A. Yes, sir.
Q. And you wish to waive that right and you wish to have this court try your case?

A. Yes, sir.
Q. Will you indicate that for the record
 by signing a jury waiver."

The jury waiver was signed and the case proceeded to trial. The court's exposition of the defendant's right to be tried by a jury was clear and complete; to have added more would have been repetitive. The defendant's answers show that he understood what the court said and his signing the waiver was an act of his own will. The record indicates that his counsel was present at the time. While he may have followed the advice of his counsel, the decision to waive a jury was made by him and not for him. If it were otherwise or if he wanted a jury trial, he had full opportunity to so inform the court.

The building burglarized was owned by Mary Pietrascewski who operated a tavern on the first floor and lived on the second. To the rear of the tavern, and on the same lot 15 or 20 feet away, was another building with a garage on the ground level and a small apartment above it occupied by a tenant. When Mrs. Pietrascewski closed the tavern about 1:30 a. m., June 7, 1963, she locked the doors and windows and left two lights burning, one above the back bar and the other on the tavern's rear porch. She was awakened by the police around 5 a. m. Upon inspecting the tavern she found that two steel bars had been unscrewed from a hallway window, many bottles of whiskey were missing, the pinball machine and juke box were broken open and all the coins removed from them, and $11 in change which had been left in the cash register was gone. The police had arrested the defendant before awakening her and she saw him in their squad car. In the car she also saw four cases of whiskey and a quantity of loose change wrapped in one of her bar towels. She identified the whiskey and recognized several of

the coins, because she had marked with red nail polish some of those which had been inserted in the juke box.

The police had received a call that a burglary was in progress at the tavern and three squad cars responded. Some of the policemen went to the rear of the tavern and one of them went into the alley back of the smaller building. There he saw the defendant and nearby found four cases of whiskey under some rubbish. The defendant was searched and $88.47 in coins and a nine-inch screwdriver were found in his pockets.

The call to the police was made by Helen Bozsiko, the tenant who lived on the second floor of the cottage at the rear of the tavern. She had been sleeping in the room which faced the tavern; it was a warm night and the three front windows were open. She got up about 5 a. m. when she heard the click of a doorknob at the rear entrance to the tavern, and she then heard a muffled burglar alarm. From a front window she saw a man in the tavern taking things from the counter and putting them on the bar. She saw this man, who wore a light tan shirt with a dark collar and who had a dish towel over his shoulder, go in and out of the tavern three times carrying cases of what she thought was beer. She watched him for almost 30 minutes before notifying the police. She continued to watch the man until the police arrived and she was at a kitchen window when they entered the alley. She saw him start walking away, and she heard a policeman ask him what he was doing in the alley and if he had seen anyone running through the alley. When she heard him reply that he had, she opened the kitchen door and said: "That's the man officer." She identified the defendant as the man whom she had seen carrying things from the tavern.

The defendant testified that he had left downtown Chicago at 4:15 a. m. after spending the night in vari-

ous eating and drinking places on the near north side with two companions whose home or working addresses he did not know. He said he was driving a rented car and was a few blocks from the South Chicago Y.M.C.A., where he resided, when he had to urinate. He said he parked the car on the street, walked through a gangway to the alley and was there when the police came. He further testified that he had seen two or three people in the alley when he entered it, that he informed the police that he had seen a man walking down the alley and that he explained to them why he was there.

█ The evidence established the defendant's guilt beyond question and there is no merit to his contention that he was not proven guilty beyond a reasonable doubt.

█ █ No motion was made in the trial court to suppress the evidence taken from the defendant, and his contention, made the first time in this court, that the search was illegal comes too late. People v. Gambino, 12 Ill2d 29, 145 NE2d 42; People v. Valecek, 404 Ill 461, 89 NE2d 368. Furthermore, the search of the defendant and the seizure of the money and screwdriver from his person were reasonable and if a motion to suppress had been made it would have had to be denied. The police officers had reasonable grounds to believe that a burglary had been committed; they had been told that a burglary was in progress, the defendant was identified as the burglar and, therefore, his arrest was lawful. The search was made at the scene of the crime and was incidental to the lawful arrest. People v. Jones, 31 Ill2d 42, 198 NE2d 821; People v. Watkins, 19 Ill2d 11, 166 NE2d 433.

█ █ The defendant's next contention is that the coins and the screwdriver were improperly admitted into evidence. The offense of burglary is the entering of a building without authority, with the intent to com-

mit a felony or a theft. Ill Rev Stats 1963, chap 38, par 19–1(a). If a theft is committed, the precise identification of the property taken is immaterial if the character of the property is such that exact identification is difficult. As this court said in People v. Lagios, 51 Ill App2d 440, 201 NE2d 245: "This is particularly true of money which, in most instances, cannot be positively identified unless it bears some peculiar mark or designation not common to all currency." Moreover, in the instant case several of the coins found on the defendant were readily identifiable because of the proprietress' practice of painting certain coins which were to be used in the juke box. A quantity of change had been stolen from the tavern and a screwdriver had been used to gain entrance to it. A quantity of change and a screwdriver were found on the defendant after a lawful search. Even if there had been no positive identification of some of the coins, the evidence taken from the defendant's person was clearly admissible.

■■ The defendant's final contention is that his civil rights were violated because of the punishment imposed upon him. The sentence of ten to fifty years was within the permissible limits of the Criminal Code (Ill Rev Stats 1963, c 38, par 19–1(b)) and was imposed after the court had heard evidence of the State in aggravation and had questioned the defendant as to his family, education, occupation, rehabilitation and background. Part of the criminal record of the defendant had been introduced into evidence for the purpose of affecting his credibility after he had testified in his own behalf and all of it was presented to the court at the hearing in aggravation and mitigation. The full record revealed that in 1951 the defendant had been convicted of three burglaries and was sentenced to the penitentiary for three concurrent terms of two to four years; that in 1954 he had been sentenced

to two to ten years in the penitentiary for armed robbery; that in 1960 he had been sentenced to the penitentiary for attempted burglary and given a term of from two to four years, and after his arrest in the present case he posted bond and while out on bond had been arrested and indicted for three additional crimes.

No civil right of the defendant was infringed by the sentence he received and in view of his previous record and the evidence in the case, the sentence imposed upon him was not excessive.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.