THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HALL, Defendant-Appellant.

(No. 54375;

First District—September 21, 1971.

Gerald W. Getty, Public Defender of Cook County, of Chicago, (Lee T. Hettinger, James N. Gramenos, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and George Elsener, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

The defendant, Robert Hall, was charged with the offenses of aggravated kidnapping and rape in violation of Ill. Rev. Stat. 1967, ch. 38, pars. 10—2, 11—1. Following a trial by jury, the defendant was found guilty of rape and was sentenced to a term of not less than ten nor more than fifteen years in the Illinois State Penitentiary.

On appeal, the defendant raises the following issues:

1) Did the trial court err by admitting into evidence certain statements made by defendants?

2) Did the trial court err by failing to conduct a preliminary hearing to determine the admissibility of an oral statement made by defendant and later introduced by the prosecution at trial?

3) Did the trial court err by failing to conduct a preliminary hearing concerning the competency of a twelve-year-old child to testify?

4) Did the trial court err by denying defendant's motion to suppress certain physical evidence?

5) Was the defendant denied a fair trial when in closing argument

the prosecutor told the jury that under the law a fifteen-year-old could not consent to intercourse?

6) Did the trial court err by refusing to give defendant's instruction concerning consent in rape cases?

7) Was the defendant denied a fair trial where the prosecutor stated during closing argument that a police officer had testified to a conversation with defendant and the officer's testimony concerning that conversation was uncontradicted?

8) Was the defendant denied a fair trial when the prosecutor, after direct examination of a police officer and a crime lab technician, showed them their respective case reports in the presence of the jury and asked if they recognized and authored the reports?

9) Did the State prove beyond a reasonable doubt that the sexual intercourse was by force and against the will of the complaining witness?

The facts of this case, when reduced to a minimum, disclose that Deborah Miller, age 15, visited the home of her aunt on October 26, 1967. About 7:00 P.M. on the next day, Miss Miller, intending to return to her own home, left her aunt's home and walked to a nearby bus stop at the corner of 59th and Halsted Streets, Chicago. Miss Miller's two cousins, Sharene Miller and James Green, accompanied her to the bus stop. A group of boys were standing on the corner as Miss Miller and her cousins approached and one of these boys, the defendant, reached out and grabbed Miss Miller by the arm. She pulled away but the defendant quickly regained his hold on her arm. Another boy came up and said something to the defendant whereupon the defendant, who was trying to kiss the struggling young lady, said: "You better do what he say because he has a gun." Miss Miller's two young cousins had, at this time, proceeded across the street and were shouting for her to hurry across the street because a bus was coming. Miss Miller struggled to free herself from the defendant's grasp but was unable to do so. The other boy then grabbed her other arm and she was pulled toward a nearby alley. Miss Miller was told to "go on up in the alley" and, with the defendant holding her arm, she walked through the alley for about two blocks. Miss Miller was then taken across a street, through a gangway and up a stairway to a porch. Each of the boys had sexual intercourse with her on the porch. The defendant then told her that she could not leave and he took her through a back door into his apartment. There were several people in the apartment and the defendant introduced Miss Miller as his girl friend. Miss Miller sat in a kitchen chair and began crying. Shortly thereafter, the defendant's mother came into the

kitchen and said that the police were looking for a girl named Deborah Miller. The defendant then grabbed Miss Miller's hand and tried to pull her out the back door. While being pulled through the doorway, she struck her head and was knocked unconscious. She was found lying on the floor between the kitchen and the rear porch by a police officer who was investigating the case and was taken to the Englewood Hospital for treatment. Subsequently, the defendant was arrested and charged with aggravated kidnapping and rape.

Defendant's first point concerns the admissibility of certain statements made by defendant to a police officer prior to arrest and introduced at trial during the officer's testimony. Specifically, Patrolman John Marusich testified in part as follows:

"Q. What else, if anything, did you see as you walked through that apartment?

A. I saw a young girl lying on the floor. She appeared to be unconscious. Her eyes were closed.

         \*    \*    \*

She was lying on the floor between the kitchen and the rear porch.

Q. Do you now know the name of that girl?

A. Yes.

Q. What is her name?

A. Deborah Miller.

Q. Was there any conversation had by you or any of those persons in that apartment with respect to the condition of that girl?

A. Yes.

Q. With whom or how many persons was that conversation had?

A. With one person, Robert Hall.

Q. What, if anything, was said by Robert Hall, and, or you with respect to that girl which you described lying on the floor?

A. I pointed to the girl lying on the floor—

         \*    \*    \*

and I said to Robert Hall, 'What happened to her?' *He replied, 'She fainted when she saw you,'* referring to me. I then asked him, 'How did she get into this apartment?' *He replied, 'She came in by herself.'* [Emphasis added.]"

Defendant argues that these statements made by him were erroneously admitted into evidence because of an alleged prior agreement by the prosecutor that no statements of defendant would be introduced at trial. Defendant relies heavily upon *People v. Mwathery* (1968), 103 Ill.App.2d 114, 243 N.E.2d 429 in support of his argument. In *Mwathery*, the defendant, prior to trial, moved to suppress a statement of one Francis

Gaines. At the pretrial hearing on the motion to suppress, the prosecutor advised the court and defense counsel that the statement of Francis Gaines would not be used for any purpose whatsoever. During the trial, however, the prosecutor established through examination of a witness that Francis Gaines had given a statement to the police and in his closing argument the prosecutor made a direct reference to the fact that Francis Gaines had given a statement to the police. At no time were the contents of the Gaines statement revealed by the prosecutor. On appeal, the defense argued that the State's Attorney had committed prejudicial error when he made reference to a statement he had agreed not to introduce. In considering this point, the *Mwathery* court said:

"The defendants were prejudiced by the question of the prosecutor and the answer of the witness, as well as by the reference made to the statement in the State's argument to the jury. The jury no doubt believed that the statement contained a confession by one of the defendants and might have even concluded that both defendants were implicated in the statement given by the defendant Gaines. * * * [T]his constituted a violation of the agreement made by the prosecutor at the time the motion to suppress the statement was about to be heard by the court. * * * This error alone might not have constituted reversible error, but together with [other substantial error which occurred at trial] is sufficient to require reversal and remandment." 103 Ill.App.2d at 122—3.

Defendant contends that the situation in the case at bar is essentially identical to the one confronted by the court in *Mwathery*. A review of certain relevant facts in the instant case is necessary before the merits of defendant's contention can be determined. In this case, as in *Mwathery*, defendant moved prior to trial to suppress under *Miranda v. Arizona* (1966), 384 U.S. 436, "any and all confessions, statements, or admissions of defendant made at the time of and after his arrest." At the pretrial hearing on defendant's motion to suppress, the following colloquy occurred:

"THE STATE: May it please the Court, in respect to the defendant's motion to suppress confession the State alleges that the detective * * * who made the arrest in regards to this defendant indicated to the State in that there were no oral or written statements made by the defendant while in custody. And we have tendered a copy of this form prepared by the named detective to the defendant by and through his attorney.

THE DEFENSE: I take it what you mean at this time you have no statements relative to this defendant in this case.

THE STATE: Specifically as I can—

THE DEFENSE: You are specifying an officer's name.

THE COURT: That is correct.

THE DEFENSE: No statements. Right &ast;  &ast;  &ast;? There may be an oral admission or may be an exculpatory statement, I don't know, your Honor. There is no statement, right?

THE STATE: To my knowledge there is not. To my knowledge."

■■ This colloquy, which we have quoted verbatim from the record, fails to support defendant's assertion that the prosecution *agreed* that none of defendant's statements would be introduced at trial. It seems patently clear that both the prosecution and the court were referring only to statements "amounting to a confession" (as characterized by the court) when the prosecution indicated that no such statements would be used in the case. With respect to any other statements or admissions which the defendant might have made, the prosecution indicated only that it had no knowledge of any other statements. If, therefore, the prosecution may be said to have agreed to anything, it was only to refrain from using any statements in the nature of a confession. The statements in question here were not in the nature of a confession (see *People v. Thomas* (1967), 88 Ill.App.2d 71, 80, 232 N.E.2d 259 which sets out the requirements of a confession) and, indeed, were not of the character afforded protection by the rule in *Miranda v. Arizona* (1966), 384 U.S. 436. The *sine qua non* for invoking the *Miranda* rule is that the interrogation be focused on the accused while he is taken into custody or otherwise deprived of his freedom of action by authorities in any significant way. *People v. Stansberry* (1971), 47 Ill.2d 541, 548, 268 N.E.2d 431. In this case, defendant was not in custody or under any type of restraint by Officer Marusich when the statements were made. The officer, who was looking through defendant's apartment, made what could appear to be a normal and ordinary on-the-scene inquiry when he encountered the body of a young girl lying on the floor. The defendant's response was made voluntarily and sometime prior to his arrest. It was certainly not the product of close interrogation by the police. The compulsion and danger of intimidation that *Miranda* was designed to eliminate were clearly not present under the circumstances here. Hence, we do not believe that the statements involved in this case were inadmissible under the principles of either *Mwathery* or *Miranda*. We also note, parenthetically, that the *Mwathery* court did not specifically find reversible error in the situation there, even though the prosecutor had breached his explicit agreement not to use a particular statement at trial, but rather the court indicated that the error was

958

insufficient of itself to require a reversal of the case. See also *People v. Milligan* (1969), 107 Ill.App.2d 58, 63—4, 245 N.E.2d 551.

■■■ Defendant further suggests that the prosecution intentionally and dishonestly deceived him concerning the existence or anticipated use of the statements in question. Under these circumstances, he argues, it was error to allow the statements into evidence. We have carefully reviewed the entire record in this case and found no evidence of any intentional bad faith or chicanery by the prosecution. The statements were, as we have indicated, properly admitted into evidence and as such were proper subjects for consideration by the jury and, therefore, proper subjects for fair comment by the prosecution in its closing argument. We note also, before passing to the second contention, that defendant has failed to demonstrate that he suffered any significant harm by the introduction of the statements. He asserts in his written brief that the statements were "damaging to the defendant since they were inconsistent with other evidence adduced at trial." While it may be true that much of the State's evidence was inconsistent with the content of defendant's statements, it is also true that the statements were entirely consistent with defendant's primary defense of consent by Miss Miller. Defendant may not validly claim that he was highly prejudiced and denied a fair trial merely because the statements were inconsistent with other trial evidence. Indeed, this court would be hard pressed to find a trial record which did not contain inconsistencies and contradictions in the evidence. Such evidentiary conflicts, in fact, define the very function of a trier of fact. Hence, for the reasons indicated, we find no merit in defendant's claims of prejudicial harm and reversible error as he has presented them in his first contention.

Defendant's second contention also concerns the oral statements which were the subject of his first contention. Defendant argues that the trial court erred by refusing to conduct a preliminary hearing to determine the admissibility of those oral statements. We do not agree. The record reveals that at trial defense counsel objected to the introduction of the statements *prior to* their introduction and asked for an immediate hearing outside the jury's presence. The trial judge took counsel for the defense and the State to his chambers (outside the presence and hearing of the jury) and heard arguments concerning the admissibility of the statements. Defense counsel, who had withdrawn his written motion to suppress at the pretrial hearing, asked leave to file a motion to suppress confession. Leave was granted instanter and the motion was denied. Defense counsel was then advised that he had the right to file a written motion to suppress if he so desired. The basis of the court's ruling on

defendant's motion to suppress was that the statements in question did not constitute a confession by defendant. Defendant's objection to the testimony concerning Officer Marusich's conversation with defendant was then overruled and the statements were introduced. Defendant never renewed his motion to suppress, *i.e.*, never filed a written motion as he had a right to do, but did move for a mistrial at the conclusion of Officer Marusich's testimony. The motion was argued in chambers and largely centered about the admissibility of defendant's oral statements to Officer Marusich. The motion was denied and the trial continued.

■■ Under the particular circumstances which we have carefully recited, we believe that the trial court's ruling on the admissibility of the statements was neither arbitrary nor in total disregard of defendant's rights to a hearing on the issue. The court had before it all relevant evidence concerning the circumstances under which the statements were made and the character or quality of the statements themselves. Counsel for both sides were allowed to argue their respective positions on the issue of admissibility. Based upon the evidence and its understanding of the applicable law, the court denied defendant's oral motion to suppress and overruled his evidentiary objection to the admission of the statements. We concur with the court's ruling and we find no merit in defendant's contention that the trial court abused its discretion by allowing the statements into evidence. Moreover, we do not believe that the statements complained of could have caused the jury to return a verdict contrary to all the other evidence and any error resulting from the recital of defendants remarks did not, in our view, constitute reversible error.

For his third contention, defendant argues that the court erred by failing to conduct a preliminary hearing concerning the competency of a twelve-year-old child to testify. At trial, the State called James Green, a twelve-year-old boy, to testify. Defendant quickly objected to the competency of the boy and moved for an examination as to competency. The State offered no particular objection to defendant's request but noted that the court had an opportunity to hear the boy testify at a pretrial hearing. The court denied defendant's motion, stating "* * * the Court has observed this witness at a previous hearing as part of this proceedings. It is the Court's opinion that this witness is competent to testify." Defendant argues that the court abused its discretion by allowing the witness to testify.

■■ In Illinois a witness is not presumed competent to testify until he is fourteen. *Shannon v. Swanson* (1904), 208 Ill. 52, 69 N.E. 869. When a child is under fourteen, his competence is ascertained by examining him as to his intelligence, understanding and moral sense.

*People v. Davis* (1957), 10 Ill.2d 430, 140 N.E.2d 675, *cert.* denied, 355 U.S. 820 (1957). To be competent the child must be "* * * sufficiently mature (1) to receive correct impressions by his senses, (2) to recollect these impressions, (3) to understand questions and narrate answers intelligently, and (4) to appreciate the moral duty to tell the truth (and comprehend the meaning of the oath)." *People v. Sims* (1969), 113 Ill.App.2d 58, 61, 251 N.E.2d 795. It is clear, therefore, that it is not age, but the degree of intelligence of a child, which determines the question of the child's competency. In the case at bar, the intelligence of the witness was ascertained by his appearance, conduct and manner of testifying at a pretrial hearing where, incidentally, he was called as a witness by the defense. The tenor of his testimony during the pretrial hearing and, indeed, during the trial itself indicates that the child was entirely competent to testify as measured by the standards set forth in *Sims.* Defendant has not demonstrated that the child was in any way incompetent or of substandard intelligence and our independent review of the record reveals no evidence of any deficiency in the child's ability to testify competently. It is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that a decision to admit such testimony will be reviewed. *People v. Davis* (1957), 10 Ill.2d 430, 437, 140 N.E.2d 675, *cert.* denied, 355 U.S. 820 (1957). We find no reason to disturb the court's determination that the witness was competent.

Defendant argues in his fourth contention that the trial court erred by denying his motion to suppress certain physical evidence, *i.e.,* a blue jacket and a pair of brown trousers. The jacket was removed from defendant's apartment prior to or contemporaneous with his arrest and the trousers were removed from his person after his arrest. The thrust of defendant's contention is that the police unlawfully entered his apartment and, therefore, unlawfully seized the jacket, that the unlawful seizure of the jacket led to his detention thereby rendering the detention unlawful, and that the unlawful detention led to the seizure of his trousers thereby rendering their seizure unlawful. The crucial determination to be made, therefore, is whether the police had a right to enter defendant's apartment. If their entry was lawful, defendant would not dispute that the seizure of the jacket was proper. Hence, we need inquire only into the propriety of the initial entry by police into defendant's apartment.

The facts disclose that numerous police units were involved in the investigation of Miss Miller's abduction. Speed was, of course, essential under the circumstances for any delay on the part of police might have seriously endangered the life of the alleged kidnap victim. Moving

swiftly, therefore, and constantly exchanging information over their radios, the police obtained the details of the offense and a description of the suspects from the eyewitnesses. Shortly thereafter, as evidenced by radio transmissions between police vehicles, the police determined that one of the suspects used the alias of "Mad Dog." "Mad Dog" was identified to be Robert Hall, the defendant. The police then received information concerning defendant's address, i.e., the second floor apartment at 6022 South Union Street, Chicago. Officer John Marusich was the first policeman to arrive at that location. He proceeded to the front door of the apartment and was met by defendant's mother. He spoke with her briefly and apparently inquired about the missing girl. Defendant's mother left him standing in the hallway while she went to the rear of the apartment to speak with her son. The door of the apartment was left open and, after waiting a few moments, the officer walked in and saw Miss Miller lying unconscious on the kitchen floor with defendant standing nearby.

■■ Under the circumstances which we have presented, we are of the opinion that Officer Marusich had reasonable grounds to believe that a crime had been committed and that defendant had committed it when he arrived at defendant's apartment, and his entry without a warrant was valid under the "exigencies of the situation." *Warden v. Hayden* (1967), 387 U.S. 294, 298. His cautious approach before entering indicates his concern for the safety of the victim and reflects favorably upon his competence as a police officer. This is clearly not a case where probable cause was developed only as a result of an unlawful entry, and authority to the effect that an entry cannot be justified by its fruits is inapplicable. Because the basis for a valid arrest existed prior to the entry, the entry was clearly justified under Ill. Rev. Stat. 1967, ch. 38, par. 107—5(d): "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest." *People v. Johnson* (1970), 45 Ill.2d 283, 288, 259 N.E.2d 57. The seizure of the blue jacket and brown trousers thus cannot be barred as being tainted from the outset by an unlawful invasion.

For his fifth contention, defendant asserts that he was denied a fair trial because of an alleged improper remark by the prosecutor during closing argument. After defense counsel had concluded his closing argument, which centered largely around the issue of consent by Miss Miller, the prosecution argued in rebuttal. We now set out the relevant portion of the record:

"THE STATE:   *   *   *   All our indictment indicates is that he took this girl with force, against her will, and raped her. Now, he comes with some amazing determinations, I presume that it is legal in nature.

Well, [he says] she gave him consent. She is 15 years of age. She could not properly give him consent under the law—

THE DEFENSE: Objection, your Honor. It is not the law.

THE COURT: The Court will instruct the jury as to the law. Let us proceed."

Defendant argues that the prosecutor's remark was an improper attempt to incorrectly instruct the jury concerning the applicable law and was so prejudicial because of an adverse effect on the jury that a new trial is necessary. We find no merit in defendant's fifth contention.

■■■■ First, we note that the prosecutor was not able to finish his sentence before being interrupted by the defense objection. Hence the propriety of the remark cannot be fairly determined. Second, we note that the trial judge quickly interjected with a curative remark. Third, the prosecutor made no other similar comments concerning the law of consent. Fourth, the jury was later instructed by the court as to the applicable law involved in the case. The existence of these factors clearly distinguishes the instant case from *People v. Weinstein* (1966), 35 Ill.2d 467, 220 N.E.2d 432 and *People v. Wright* (1967), 80 Ill.App.2d 300, 225 N.E.2d 460, upon which defendant relies. Moreover, even if the remark by the prosecutor was viewed as an improper one, we are of the opinion that it could not have been a material factor in defendant's conviction, and therefore did not constitute reversible error. Improper remarks do not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Nilsson* (1970), 44 Ill.2d 244, 248, 255 N.E.2d 432, *cert.* denied, 398 U.S. 954 (1970).

■■■■ Defendant's sixth contention concerns the instructions given to the jury prior to their deliberation. Defendant contends that the court erred by refusing to give Defense Instruction No. 14, which stated: "When I use the words 'by force and against her will' I mean that under the circumstances the female did not voluntarily consent to sexual intercourse." Defendant argues that his entire case rested on the issue of consent and he seems to suggest that the jury was inadequately instructed on this issue. We do not agree. The record indicates that State's Instruction No. 7, which recited the statutory definition of rape, was given and was immediately followed by Defense Instruction No. 15, which stated:

"To sustain the charge of rape, the State must prove the following propositions:

\*   \*   \*

Third: That the act of sexual intercourse with Deborah Miller was by force and against her will, and *that she did not voluntarily consent to it.* Emphasis added.

We believe that these instructions, when considered as a whole, fairly reflect that the jury was fully instructed as to the law applicable to the facts underlying the defense of consent. This factor clearly distinguishes the cases upon which defendant relies for in those cases the jury received no instructions concerning the issue of voluntary consent by the prosecutrix. Defense Instruction No. 14 was merely repetitious and the trial judge's refusal to give it was not, therefore, reversible error.

Defendant did not testify at trial and, for his seventh contention, he argues that certain remarks by the prosecutor in closing argument constituted a denial of his constitutionally protected privilege against self-incrimination because those comments were an impermissible reference to his failure to testify. See *Griffin v. California* (1965), 380 U.S. 609. The remarks to which defendant objects are as follows: "If you [the jury] will recall, Officer Marusich asked Mr. Hall, 'What happened?' pointing to the young Deborah Miller as she lay unconscious at that location. His answer was, 'She fainted when she saw you.' Uncontradicted. Uncontroverted."

The Illinois Supreme Court has held that an appropriate test in determining whether a defendant's right to remain silent has been violated is whether the reference in closing argument was "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." *People v. Burton* (1969), 44 Ill.2d 53, 56, 254 N.E.2d 527. It is permissible, however, for a prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself. *People v. Mills* (1968), 40 Ill.2d 4, 8, 237 N.E.2d 697; *People v. Keagle* (1956), 7 Ill.2d 408, 131 N.E.2d 74, *cert. denied*, 351 U.S. 942 (1956). In the instant case, the prosecutor stated only that the testimony of Officer Marusich concerning the conversation he had with the defendant had not been contradicted. We do not believe that the prosecutor's reference exceeded the limits of allowable comment. See *People v. Mentola* (1971), 47 Ill.2d 579, 582–3, 268 N.E.2d 8.

For his eighth contention, defendant asserts that he was denied a fair trial because the prosecutor showed a police officer and a crime lab technician their respective case reports in the presence of the jury. The record indicates that the prosecutor, at the conclusion of his direct examinations of the officer and the technician, had certain documents marked for identification and then asked each of the witnesses to examine the documents. Each witness indicated that the documents he was shown constituted his case report in the matter. Defendant suggests that this procedure by the prosecutor was an improper attempt to strengthen and corroborate the witnesses' testimony and had the effect of forcing

defense counsel to use the reports for cross-examination or suffer the inference that he was hiding something from the jury.

■|■■■■ The rule of law upon which defendant bases his contention is that it is error for such reports to be tendered to the defense in the presence of the jury. *People v. Lowe* (1967), 84 Ill.App.2d 435, 228 N.E.2d 563; *People v. Beard* (1966), 67 Ill.App.2d 83, 214 N.E.2d 577. Although in the instant case the reports were not actually turned over to defense counsel in the jury's presence, we agree that the prosecutor's actions were generally of the same improper character. However, though we do not approve of the prosecutor's conduct, we do not find reversible error in the case at bar. Here the prosecutor made no other references to the reports during trial or closing argument and did not suggest to the jury that the reports were of any corroborative value. Moreover, timely objections by the defense and detailed instructions given to the jury prior to their deliberation clearly nullified any adverse effect suffered by the defendant. We believe, therefore, that the error was harmless and could not have affected the result in this case. See *People v. Cunningham* (1970), 123 Ill.App.2d 190, 260 N.E.2d 10; *People v. Bickham* (1968), 91 Ill.App.2d 465, 235 N.E.2d 400.

■■ Defendant's final contention is that the State failed to prove beyond a reasonable doubt that the sexual intercourse was by force and against the will of the complaining witness. In deciding this question, we are mindful that the examination of evidence in a rape case demands utmost caution and circumspection by a reviewing court because a female's accusation, often stemming from clandestine circumstances, is easily made, difficult to prove and frequently even more difficult to disprove. We are also mindful, however, that a jury is in a far superior position to observe witnesses, determine their credibility and resolve evidentiary conflicts. With these principles guiding us, we have carefully scrutinized the entire record and have concluded that the evidence was indeed sufficient to establish defendant's guilt beyond a reasonable doubt. Hence we find no merit in defendant's final contention.

The judgment of the trial court is affirmed.

Judgment affirmed.

BURKE, P. J. and GOLDBERG, J., concur.