THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE TOLEFREE, a/k/a OSCAR GEORGE TOLEFREE, Defendant-Appellant.

(No. 56990;

First District—December 27, 1972.

James J. Doherty, Public Defender, of Chicago, (Elliott M. Samuels, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, Oscar George Tolefree, was charged with the offense of burglary. He was convicted in a bench trial and sentenced to serve one to three years in the Illinois State Penitentiary. Defendant raises the following issues for review:

> (1) Whether the admission of defendant's statements to the police at the scene of the burglary violated defendant's rights under the Fifth and Sixth amendments to the United States Constitution;

> (2) Whether the trial judge penalized defendant for exercising his Fifth Amendment privilege; and

> (3) Whether the evidence proved defendant's guilt beyond a reasonable doubt.

The facts are as follows:

In the early morning hours of March 5, 1971, Chicago police officers responded to a burglary alarm at the Independent Auto Radiator Company, located at 2234 W. Flournoy in the city. When the officers approached the building, they noticed that the front window had been broken and that the metal screen covering the window had been pulled back. The officers entered the building and noticed rolls of copper coil

beneath the broken window. After completing a search of the premises, the officers resumed their patrol of the area when they noticed an old auto parked a half-block from the building with its trunk open. It was the only auto on the street. Inside the trunk were copper coils, similar to those inside the radiator shop and defendant was seen kneeling beside the auto with a lug wrench in his hand. The officers asked defendant about the car and defendant told them that the auto was his. The officers asked him about the copper in the trunk and he said he didn't know anything about it.

Defendant was then placed under arrest and transported to the 12th District Police Station. The copper coils in his car were identified by the owner of the radiator shop as being of the same type and size as were stolen from his shop. The owner believed that his shop was the only one in the Chicago area that used that particular size tubing as he had been unable in the past to ever find that size tubing in any of the other firms in the area. At the 12th District Station, defendant was advised of his constitutional rights and he then told the officers that his name was George Tolefree and that he didn't own the auto in question, but that his cousin Oscar Tolefree did. The officers learned, after investigating, however, that Oscar Tolefree and George Tolefree were in fact the same person—the defendant.

Defendant testified in his own behalf and denied committing the burglary. He said that sometime after 1:00 A.M., on March 5, 1971, a man called Big Red and another man came to defendant's house and asked if he would move some "stuff" for them for $15.00. Defendant agreed and the men started loading the "stuff" into the trunk of defendant's car. When the men saw the police officers, they ran away.

The trial judge found defendant's story incredible and found him guilty of burglary. After a hearing in aggravation and mitigation, defendant was sentenced to serve a term of one to three years in the Illinois State Penitentiary.

Defendant's initial contention on appeal is that the admission into evidence of statements defendant made to the officers when they first approached him at the scene was error as defendant had not been advised of his Fifth and Sixth amendment rights, as required by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.C. 1602.

Defendant, in his brief, contends that the "* * * focal point for *Miranda* is not a formal arrest or the actual restraint of the accused. On the contrary, *Miranda* is triggered once the investigation has *focused* on the accused. (384 U.S. 444, n. 4) *See also Escobedo v. Illinois.* 378 U.S. 478, 490, 491." Defendant maintains that inquiries by the officers as to

whether defendant owned the vehicle in question and as to what defendant knew about the copper in the trunk were improper without prior *Miranda* warnings as the officers' investigation had already "focused upon defendant."

When the United States Supreme Court in *Miranda* used the term "focused on an accused" they were explaining the term as it was found in their opinion in *Escobedo v. Illinois*, 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758. The court explained that what was meant by an investigation which had "focused on an accused" was a custodial interrogation, that is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (*Miranda v. Arizona*, 384 U.S. 436 at 444 n. 4) In holding that an individual subjected to "custodial interrogation" must first be warned of his Fifth and Sixth amendment rights, the court sought to safeguard those rights for individuals placed by the police in an inherently coercive environment which could make an accused feel compelled to answer questions. The purpose was to preserve the right, " 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)." *Miranda v. Arizona*, 384 U.S. at 460.

■■ The *sine qua non* for invoking the *Miranda* rule is thus not merely that an inquiry is directed at an accused, but rather that the interrogation be focused on the accused while he is taken into custody or otherwise deprived of his freedom of action by authorities in a signicant way. (*People v. Stansberry*, 47 Ill.2d 541, 268 N.E.2d 431; *People v. Hall*, 1 Ill.App.3d 949, 275 N.E.2d 196.) *Miranda* warnings are not necessary where the police conduct a general, on the scene, questioning as to facts surrounding a crime. (*People v. Parks*, 48 Ill.2d 232, 269 N.E. 2d 484.) *See, Lowe v. United States* (9th Cir. 1969), 407 F.2d 1391, for a review of opinions of the United States Court of Appeals and of the Appellate Courts of various States which illustrate the range of inquiries that come within permissible "on-the-scene questioning." Nor are *Miranda* warnings required when a police officer makes inquiries of persons in public locations under suspicious circumstances. (*Jennings v. United States*, (5th Cir. 1968), 391 F.2d 512; *United States v. Gibson* (4th Cir. 1968), 392 F.2d 373; *United States v. Thomas*, (2d Cir. 1968), 396 F.2d 310; *Arnold v. United States* (9th Cir. 1967), 382 F.2d 4; *People v. Milligan*, 107 Ill.App.2d 58, 245 N.E.2d 551.) It was held in these·decisions that policemen confronted with suspicious circumstances, which might have been resolved with a satisfactory explanation from the person questioned, were permitted to make inquiries which were of an investigative nature without first giving the *Miranda* warnings.

██ In the instant case, police officers who had just investigated a burglar alarm at a shop whose windows and protective screening had been broken open and where the copper coils were seen near the open windows, noticed a vehicle near the shop with its trunk ajar and filled with tubing similar to that which they had seen in the shop. When the officers approached the vehicle, they noticed defendant crouched near the front wheel of the auto with a tire wrench in his hand. The officers asked the defendant whose car that was and what he knew about the coils in it. In determining that those questions and defendant's reply to them were admissible, the trial court found that defendant might have been "* * * the garage man from the corner fixing somebody's tire. I think it's a very fair question to ask, and in this case if he'd of said, 'I am the gas man from the corner, fixing John Doe's tire,' nobody would be here today."

After careful examination of the record, in the case at bar, we find that the two questions asked by the officers before giving defendant his *Miranda* warnings were of a general investigative nature ensuing from a suspicious circumstance near the scene of a crime. We must agree with the trial judge that defendant's constitutional rights were not violated by the admission of the statements he made to the officers at the scene.

Defendant next contends that the trial judge impermissibly penalized him from exercising his Fifth Amendment privilege by inferring guilt from defendant's failure to make an exculpatory statement to the police. Defendant contends that language of the trial judge indicated that he based his decision upon a statement by one of the officers that, after defendant was advised of his rights at the police station, he refused to answer any questions.

██ At the conclusion of the testimony, the trial judge said:

"The testimony that I heard not now, seven months later, but that night, both officers, 'I don't know nothing about it[,]' [t]he copper in his car. Now he makes the story up about Big Red and little so and so and then he said he didn't know. * * * It's just impossible to believe."

Our examination of the record in the instant case reveals that the trial judge in no way was referring to defendant's failure to make an exculpatory statement to the police, but rather the trial judge was commenting on the credibility of defendant's testimony. The judge was comparing the defendant's statement at the time of arrest with his statement in court and concluded that defendant's testimony at trial was incredible. The judge made no reference whatever to the statement by the officer that after defendant was warned of his right he refused to answer ques-

tions and thus in no way penalized defendant for the exercise of his Fifth Amendment privilege.

Defendant's final contention on appeal is that he was not proven guilty of burglary beyond a reasonable doubt, as there was insufficient evidence adduced at trial to prove that the copper in defendant's car was the same copper that had been stolen from the radiator shop.

■■ Defendant concedes that one may be convicted of burglary under the theory of recent and unexplained possession of property taken in such burglary (*People v. Ray*, 80 Ill.App.2d 310, 225 N.E.2d 467), but maintains that the inference of guilt arising from such possession must be supported by positive identification of the allegedly stolen property and equally positive proof showing that the property was seized during an unlawful entry. On the contrary, it is well settled that in burglary prosecutions, precise identification of property taken is not required when the character of the property is such that exact identification is difficult. *People v. Kozlowski*, 95 Ill.App.2d 464, 238 N.E.2d 156; *People v. Brancztet*, 59 Ill.App.2d 381, 208 N.E.2d 416.

■■ In the instant case, a radiator shop was burglarized and nine copper coils weighing 500 lbs. were stolen. Police officers responding to a burglar alarm found copper coils beneath a broken window in the shop, and immediately thereafter and within a half-block of the shop found defendant with the trunk of his car loaded down with nine coils of copper weighing 500 lbs. There were no identifying serial numbers on the copper, but the owner of the shop testified that he had been unable to ever acquire the particular size of copper tubing stolen from any other firm in the Chicago area, and he believed his firm was the only one to carry that particular size of copper tubing. It was that size copper tubing found in the trunk of defendant's auto. The owner of the shop also testified he at no time gave defendant permission to enter his shop. We therefore conclude there was sufficient evidence in the record to allow the trier of fact to conclude that defendant was guilty of burglary beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.