THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* PEARL DI NUNZIO, Defendant-Appellee.

(No. 74-373;

Second District (2nd Division)—November 26, 1975.

John J. Bowman, State's Attorney, of Wheaton (Malcolm Smith, Assistant State's Attorney, of counsel), for the People.

A. E. Botti, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The State appeals from an order entered by the trial court on defendant's motion suppressing all statements, admissions and confessions made by defendant to an investigator for the State's Attorney of Du Page County, and suppressing all gambling equipment (3 slot machines) seized at defendant's beauty shop. We reverse and remand.

The evidence presented at the hearing on defendant's motion established that on February 13, 1974, at about 1 p.m., Ms. Mattson, an investigator for the State's Attorney, went to defendant's beauty parlor in Warrenville (without a search warrant) to confirm the existence of slot machines there. She had prior information that the slot machines were there but no knowledge as to where in the shop they were located.

The beauty parlor, a "business place," consists of one large room with

a partition. At the rear of this large room the partition has an open, undraped doorway or "archway," about three feet wide (which was not equipped with a door). No slot machines were visible when she entered the front portion of the shop. The only person present was one who she assumed was a customer, "under the dryer." During the period of about ten minutes (after which defendant appeared) Ms. Mattson walked to that archway. While standing there she saw the slot machines on the right (the nearest of which was less than one foot from the archway) and the washroom on the left. She passed through, used the washroom and returned to the front of the shop and looked at clothes that were for sale "hanging on racks." Defendant then arrived.

Ms. Mattson had her hair washed by defendant. During that period she conversed with defendant about the slot machines, and Ms. Mattson testified that defendant told her that customers played them. Ms. Mattson then asked the defendant several questions, *i.e.*, whether the machines work, if "customers played them," and asked if she could play them herself. Defendant answered these questions in the affirmative. Ms. Mattson then did play the machines.

Defendant testified that she did not give permission to enter the rear portion of the premises or to play the machines and that prior to Ms. Mattson's visit at the shop her business was by appointment only. When asked if customers used the washroom she answered, "They usually ask to use it."

Subsequently, a search warrant was issued based on Ms. Mattson's information and the slot machines were seized. Defendant was arrested and charged with the offense of keeping gambling devices in violation of section 28—1(a)(3) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 28—1(a)(3)). After hearing, the trial court granted defense motions to suppress the gambling equipment seized and defendant's statements, resulting in this appeal by the State.

The State contends that there was no search here because the slot machines were in plain view and could be easily observed by any person standing in a location (*i.e.*, the archway in the partition) readily accessible to the public. We agree.

Defendant's beauty shop was a walk-in type of business establishment, open and available to the public. In the front part defendant obviously greeted her customers (whether they came in by appointment or not). There, defendant had clothes for sale on a rack, and apparently hair washing and drying was done there. From the open archway anyone can view the "back room" and its contents, including the slot machines. There also is located the washroom which is available for use by any of defendant's customers. In the back portion of the shop, de-

fendant also testified, she does "setting of the hair"; she also uses it for "tints and hair dyes and spray nets, so nobody gets hurt if anything is mixing or exploding." (And, of course, she used it for the slot machines which were visible from the open archway.)

■■ It is clear from this record that in the case at bar there was no prying into hidden places and no search (*People v. Vagil,* 9 Ill.App.3d 726; *People v. Bombacino,* 51 Ill.2d 17, 22). The gambling devices seized fall within the "plain view" doctrine. In *People v. Marvin,* 358 Ill. 426, 428, the Supreme Court said:

> "A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. A search implies an invasion and quest with some sort of force, either actual or constructive." (358 Ill. 426, 428.)

This language was quoted with approval in *City of Decatur v. Kushmer,* 43 Ill.2d 334, 338.

■■ In the case at bar the investigator had no appointment and was accepted as a customer, without appointment. During the time she was receiving her hair wash defendant spoke freely, voluntarily and without any coercion. It is well settled that *Miranda* warnings are not necessary when police conduct a general, on-the-scene questioning as to facts surrounding a crime. (*People v. Parks,* 48 Ill.2d 232, 237 and *People v. Tolefree,* 9 Ill.App.3d 475, 478.) Defendant was not in custody or under any type of restraint, and there was no custodial interrogation when her statements were made. Her responses were made voluntarily and were not the product of close interrogation by the investigator and would be admissible (see *People v. Hall,* 1 Ill.App.3d 949). Under these circumstances no *Miranda* warnings were required.

Therefore, the trial judge erred in suppressing the gambling equipment and the statements of the defendant, and this cause is reversed and remanded.

Reversed and remanded.

T. MORAN and DIXON, JJ., concur.