THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT LEE JONES, Defendant-Appellant.

First District (4th Division)    No. 80-583

Opinion filed June 18, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Dean C. Morask, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendant, Robert Lee Jones, was found guilty of theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1) and was sentenced to a four-year prison term.

On appeal, defendant contends: (1) the trial court improperly instructed the jury; (2) the improper jury instruction and the prosecutor's closing argument emphasized defendant's silence at the time of his arrest; (3) the prosecutor's closing argument improperly emphasized defendant's failure to testify; and (4) the trial court, prior to sentencing, erroneously failed to determine whether defendant should receive treatment under

the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq*.).

We affirm.

*Factual Background*

Officer Thomas Patterson testified that at 5 p.m. on September 27, 1979, he and his partner, John Roman, were patrolling a Chicago Transit Authority elevated station. They were dressed in civilian clothing. Patterson observed defendant standing on the sidewalk in front of the station. He saw defendant approach various persons and show them the contents of a shopping bag. From a distance of 10 feet, he noticed that the shopping bag which defendant held contained clothing garments attached to hangers. It appeared that price tags were affixed to the garments and the garments were hanging over the side of the shopping bag. After watching defendant for a short time, Patterson walked over and stood next to defendant, and looked into the shopping bag. Patterson again observed numerous garments on coat hangers. Each garment had a "full" price tag attached to it. Patterson explained that a "full" price tag is one which is divided into three consecutive parts. The price tags attached to the clothing indicated that the clothing came from Carson, Pirie, Scott and Company (Carson).

Patterson further testified that he had purchased clothing from Carson's store on numerous occasions. Each article of clothing which he purchased had a "full" price tag attached to it. In Patterson's experience, the salesperson always detached the first part of the three-part price tag and then removed the clothing from the hanger prior to wrapping the clothing and completing the sale.

Patterson further asserted that after observing the clothing in defendant's shopping bag, he identified himself to defendant as a police officer and asked defendant "where he had gotten the clothing." Defendant shrugged his shoulders. Patterson then took the shopping bag from defendant, opened it up, and saw that each piece of clothing was on a hanger and had a "full" price tag attached. Patterson identified this clothing at trial as the clothing he had recovered from defendant's possession and which had been in the shopping bag.

After Patterson looked through the shopping bag, he asked defendant "if he would come into the station with us so we could check out where this merchandise was from." He then advised defendant of his constitutional rights. The defendant indicated he understood his rights. Defendant and Patterson then went to the police station where Patterson later determined the value of the clothing to be $543.

Wayne Malchin, who had worked for 1½ years as a security dispatcher for Carson's State Street store, testified that he was familiar with the sales procedure utilized by Carson's salespersons. Malchin asserted

that when an item is purchased from a Carson's store the salesperson removes the hanger and the first portion of the price tag before placing the item into a bag.

Malchin also explained that the code numbers on the price tags indicated that the item would be sold in a particular Carson store and department. Malchin also stated that the price tags contain a season number which indicates what month the item will be sold. Malchin examined the code numbers on the price tags of the clothing which Patterson had recovered. Malchin stated the tags disclosed that the clothing came from the Carson's store located on State Street and was available for sale in early September. Malchin also identified the hangers as property of a Carson's store and stated that he had observed clothing similar to that recovered from defendant on sale in Carson's State Street store on September 27, 1979.

On cross-examination, Malchin again asserted that the code numbers on the price tags indicated the clothing was scheduled for sale in the month of September. He acknowledged that the time could have been September 1, but he did not think the clothing would have been available for sale before then. Malchin also explained that the price tags are attached to the clothing before it arrives at a Carson's store.

On redirect examination, Malchin said that the price tags indicated the merchandise belonged to Carson and that the hangers also belonged to Carson. On recross-examination, Malchin admitted that the hangers did not bear Carson's name.

Maurice McKatherne, a Carson's store detective for two years, testified that on September 27, 1979, he was sent to the police station by the manager of Carson's security. There, McKatherne observed Carson's merchandise, and he identified this merchandise at trial. He also described the significance of the code numbers printed on the price tags.

McKatherne further explained the sales procedure utilized by Carson's sales persons. This explanation was substantially the same as the explanation given by Malchin. McKatherne also asserted that the Carson price tag is attached to sale merchandise before the merchandise arrives at the store. He also stated that the clothing is placed on hangers before "it hits the floor." He acknowledged that clothing merchandise is placed on hangers before it arrives at the store.

On cross-examination, McKatherne asserted that the code number reflected on the price tags of the recovered merchandise indicated the clothing would be available for sale in September. The items could not have been on sale any earlier than September because they would not have "hit the floor." Although McKatherne did not know when the items with that particular code number would reach the warehouse, he did not

think the items could have been in the warehouse for months. McKatherne explained that then the "tags [wouldn't] go on them for months. The tags won't go on until they hit the floor." He admitted that he did not know when the items would be tagged, but he knew that the items were tagged when they arrived at the store.

On redirect examination, McKatherne testified that he knew that the merchandise at trial had not been purchased by a customer because the price tags had not been separated or divided but remained intact.

The defendant did not present any evidence. The jury returned a guilty verdict. This appeal followed.

OPINION

I

Defendant first contends that the trial court erred in giving the instruction tendered by the State which permits an inference of theft from unexplained possession of recently stolen property. The instruction which defendant argues deprived him of a fair trial states:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by [theft]."

See Illinois Pattern Jury Instructions, Criminal, No. 13.21 (2d ed. 1971).

Defendant argues that the instruction was improperly given because the State failed to show the property in defendant's possession was recently stolen. We disagree.

■■ To warrant an inference of guilt from possession of stolen goods, the possession must be exclusive and recent. Recent possession is ordinarily a question of fact for the trier of fact. (*People v. Malin* (1939), 372 Ill. 422, 24 N.E.2d 349.) Precise time limits cannot be fixed as to when, as a matter of law, exclusive possession of stolen goods ceases to be recent. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551.) Whether a defendant's possession of stolen goods at a particular time is too remote to permit the inference that he had stolen the goods at an earlier time is a question of fact. *People v. Pride; People v. Malin.*

The crux of the issue here is that the State could not determine exactly when the merchandise was stolen from Carson's store because Carson did not report the merchandise stolen. Defendant was apprehended with the merchandise on September 27. Both McKatherne and Malchin testified that the code number on the tags on the recovered merchandise indicated the merchandise was intended to be displayed in the store for sale in September, and that therefore the merchandise was probably taken from the store in September. McKatherne and Malchin

also acknowledged, however, that the price tags were attached to the merchandise before it reached the store and therefore the merchandise could have been taken before it reached the store in September.

Defendant argues that this evidence indicates that the merchandise could have been stolen months before defendant was apprehended. McKatherne's testimony, however, belies such a notion. When asked whether the tagged merchandise could have been sitting in a warehouse for months, McKatherne responded that it could not because "The tags [in that instance] wouldn't go on them for months. The tags won't go on until they hit the floor [of the store]."

■■ The clear import of this testimony, in our view, is that the merchandise contained in the warehouse would not be tagged until the time when it was ready to be sold in Carson's store—sometime in early September or very late August. Since defendant was apprehended with the merchandise on September 27, we believe there was sufficient evidence of recent possession presented to the jury for its determination and therefore the trial court correctly instructed the jury. *People v. Mitchell* (1975), 34 Ill. App. 3d 311, 340 N.E.2d 226.

## II

Defendant next contends that since the instruction allowed the jury to infer defendant's guilt from his unexplained possession of recently stolen goods, the instruction penalized him for exercising his constitutional right to remain silent during custodial interrogation and therefore the instruction was improper. In a related argument, defendant contends that Officer Patterson's testimony concerning defendant's comment on the nature of the defendant's response of shrugging his shoulders when asked where he had gotten the clothing, and the prosecutor's repeated comment on the nature of the defendant's response penalized defendant for exercising his right to remain silent. The State argues that the instruction did not penalize defendant because the instruction is a neutral instruction which did not direct the jury's attention to defendant's conduct at the time Officer Patterson first questioned him. The State also maintains that since defendant was not subjected to custodial interrogation, evidence of defendant's response and the prosecutor's comment on that response was proper. We agree with the State's position.

Illinois Supreme Court Rule 451 provides that the Illinois Pattern Criminal Jury Instructions should be used where applicable. (Ill. Rev. Stat. 1977, ch. 110A, par. 451.) In the instant case, the evidence showed that defendant had recent and exclusive possession of merchandise which had been stolen from a Carson's store. All of the State's witnesses testified that the price tags affixed to the merchandise had not been altered in the manner customary to a consumer sales transaction at a Carson's store.

Defendant was observed attempting to sell this merchandise to passing strangers.

■■ This evidence, we believe, renders the theft instruction applicable within the meaning of Rule 451 (Ill. Rev. Stat. 1977, ch. 110A, par. 451). We do not agree that the instruction improperly emphasized evidence of defendant's silence and his shoulder shrugging response to Patterson's question. As in *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357, the evidence here established that defendant possessed recently stolen property, and no plausible explanation for such possession consistent with innocence was presented. Defendant could have satisfactorily explained his possession by evidence independent of his own testimony. As noted, the instruction itself is neutral. See *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357; *Turner v. United States* (1970), 396 U.S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642; *Yee Hem v. United States* (1925), 268 U.S. 178, 69 L. Ed. 904, 45 S. Ct. 470.

We also disagree with defendant's argument that his silence and his act of shoulder shrugging were constitutionally protected activities which rendered the instruction and prosecutorial comment on the activities improper under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. In our view, defendant was not subject to custodial interrogation when he gave his shoulder shrugging response to Patterson's initial question as to how defendant came into possession of the clothing. (*People v. Hayes* (1971), 133 Ill. App. 2d 885, 272 N.E.2d 423.) Thus, even if the instruction did emphasize defendant's actions at that point in time, the instruction was proper. Similarly, Patterson's testimony about defendant's action at that time, and the prosecutor's comment upon the same, was proper. *People v. Hayes.*

As in *Hayes*, Patterson, the arresting officer, propounded only one question to defendant during the investigation stage and before defendant's arrest. The question put was only an inquiry as to where defendant obtained the clothing. It is well-settled that a police officer is permitted to make inquiries of an investigative nature without first giving *Miranda* warnings when he is confronted with suspicious circumstances which might be resolved by an explanation from the person questioned. (*People v. Tolefree* (1972), 9 Ill. App. 3d 475, 292 N.E.2d 452.) Unless a person has been taken into custody or has otherwise been deprived of his freedom in a significant way, *Miranda* warnings are not required to be given. (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) In the absence of actual arrest, something must be done or said by the police which indicates that they would not have heeded a suspect's request to depart or have allowed the suspect to do so. *United States v. Hall* (2d Cir. 1969), 421 F.2d 540.

■■ Police officers are not required to preface with a *Miranda* warning all

noncoercive preliminary questioning conducted in the course of an investigation. (*United States v. Gibson* (4th Cir. 1968), 392 F.2d 373.) We find the following quote from *Gibson* especially appropriate to the facts presented by this case: "In the complete absence of the element of coercion, actual or potential, or police dominance of the individual's will, the mild police activity shown here should not prevent the introduction of statements [or actions] freely made." (392 F.2d 373, 376.) Since defendant's action was given in response to Patterson's on-the-scene preliminary questioning, Patterson's testimony describing defendant's shoulder shrugging action and the prosecutor's comment upon it did not violate defendant's constitutional rights. *People v. Hayes* (1971), 133 Ill. App. 2d 885, 272 N.E.2d 423. See also *People v. Parks* (1971), 48 Ill. 2d 232, 269 N.E.2d 484; *People v. Tolefree* (1972), 9 Ill. App. 3d 475, 292 N.E.2d 452.

### III

Defendant next contends that certain statements made by the prosecutor during closing argument necessitate reversal. The prosecutor remarked that the evidence was uncontradicted and then stated:

> "Ladies and gentlemen, if that property was indeed paid for what reasonable explanation, reasonable, I didn't say speculative * * * I said reasonable explanation is there for those tags still being on that property? Has anyone offered you a reasonable explanation for that? No one has because there is no reasonable explanation."

The State contends that the claimed error was waived because defendant failed to object to the comments. We agree. (*People v. Carroll* (1977), 49 Ill. App. 3d 387, 364 N.E.2d 408.) Even if we were to consider the alleged error, we would not find any basis upon which to reverse the conviction.

By statute (Ill. Rev. Stat. 1977, ch. 38, par. 155—1) and by Federal Constitution (see *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229), the court and the prosecutor are forbidden from making any direct reference to a defendant's failure to testify (*People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527). The prosecutor, however, may refer to the fact that the testimony of the State's witnesses is uncontradicted even though the defendant is the only person who could have contradicted it. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) The test to be applied in such a situation is whether the references were " 'intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify?' " *People v. Mills* (1968), 40 Ill. 2d 4, 8, 237 N.E.2d 697, 700.

■■ Although the comment "Has anyone offered you a reasonable explanation" obviously refers to the defendant, we do not believe that it was calculated to draw attention to defendant's failure to testify. Rather,

the comment was directed to draw attention to defendant's failure to present any evidence of a reasonable explanation as to why the merchandise which defendant possessed still bore "full" price tags. The statement is a justifiable comment on the fact that the only explanation of how defendant obtained the merchandise came from the State. (*People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072. See also *United States v. Davis* (7th Cir. 1971), 437 F.2d 928; *People v. Asey* (1967), 85 Ill. App. 2d 210, 229 N.E.2d 368.) Consequently, we conclude that the prosecutor's comments were within the bounds of proper argument.

## IV

Defendant next contends that he is entitled to a new sentencing hearing because the trial court "had reason to believe defendant was an addict but failed to determine if he should receive treatment as an addict."

The Dangerous Drug Abuse Act provides in pertinent part:

"If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible * * *, the court may advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by the Department. * * *." (Ill. Rev. Stat. 1977, ch. 91½, par. 120.10.)

Under the statute, a trial court is required to inquire into a defendant's alleged addiction problem if the trial court has reason to believe the defendant is an addict. (*People v. Davis* (1976), 42 Ill. App. 3d 485, 355 N.E.2d 730.) In such a situation, the trial court must exercise its discretion in determining whether defendant should be provided treatment under the Act and the record must reflect the trial court's consideration of defendant's possible treatment under the Act. *People v. Ruffin* (1977), 46 Ill. App. 3d 448, 361 N.E.2d 49.

The Act defines an addict as a person who habitually uses any drug other than alcohol so as to endanger the public morals, health, safety or welfare or as to have lost the power of self-control with reference to his addiction. Ill. Rev. Stat. 1977, ch. 91½, par. 120.3—3.

In the instant case, the presentence report contained the following information:

"The defendant stated that he is currently in good health * * *. The defendant stated he has a drinking problem. The defendant stated that in the past he has used heroin. The defendant stated he has a drug problem * * *. State defendants needs: Narcotic. Alcohol."

At the sentencing hearing, the trial judge indicated he had read the presentence investigation report and that he would take all matters

referred to in the report into consideration when sentencing defendant. It is evident from the record, therefore, the trial court did not think it had reason to believe from the presentence report that defendant was, at that time, an addict.

The presentence report indicated that in the past defendant used heroin and that currently he used alcohol. The report also referred to defendant's statement that he "has a drug problem" and stated his needs as "Alcohol [and] Narcotic." Defendant argues that these oblique references gave the trial court reason to believe the defendant was, at that point in time, an addict. We disagree.

In *People v. Knowles* (1977), 48 Ill. App. 3d 296, 362 N.E.2d 1087, the defendant testified during a sentencing hearing that he no longer used heroin on a regular basis but that he had recently used barbiturates. The appellate court held there was no reason to believe that defendant was an addict since there was no evidence that his use of barbiturates amounted to an addiction except defendant's conclusory and unsupported statements about withdrawal symptoms. Similarly, here, the trial court had no reason to believe defendant was currently an addict simply from defendant's statement in the presentence report that he has a drug problem.

In our view, defendant's reliance on *People v. Simms* (1978), 60 Ill. App. 3d 519, 377 N.E.2d 154, and *People v. Melson* (1976), 36 Ill. App. 3d 71, 343 N.E.2d 258, is misplaced. In *Simms*, the presentence report noted that the defendant there, convicted for a burglary in June 1976, had had a heroin habit from 1973 to 1976. The defendant there had been treated in one drug program and also expressed interest in attending another drug program. In *Melson*, the presentence report had several references which indicated defendant had a serious drug dependency problem. The report additionally contained letters written by defendant to the probation officer wherein defendant admitted he could not control his use of drugs.

■■ In marked contrast to the extensive drug information in *Simms* and *Melson*, the presentence report in the instant case contained one reference to defendant's stated "drug problem" and another to defendant's need for narcotic. We do not believe that these two references gave the trial court reason to believe defendant was a drug addict, and therefore, we conclude, no new sentencing hearing is required.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.