(No. 37706.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSIE MERRIT, Plaintiff in Error.

*Opinion filed November 26, 1963.*

JOHN F. WHITE, of Chicago, (JACOBS AND McKENNA, and BARRY L. KROLL, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Jessie Merritt, was convicted of the crime of burglary after a bench trial in the criminal court of Cook County. He was sentenced to the penitentiary for a term of not less than 3 nor more than 15 years. On this writ or error, he contends that his guilt was not proved beyond a reasonable doubt.

On the evening of February 20, 1962, Harry Kaplan and his wife were watching television in their home on Chicago's south side. About 11:50 P.M., they heard a noise in the kitchen and discovered that a kitchen window had been opened and that Mrs. Kaplan's purse had been taken. Only a few minutes before, the Kaplans had seen the purse on a table next to the opened window. The purse contained $26 in bills, about $4 in change, glasses, identification papers, and a number of keys.

About 12:10 A.M., police officer Robert Carbray saw the defendant several blocks from the Kaplan home "with something under his coat, a large object." In response to the officer's questioning, the defendant produced a woman's purse from under his coat. There was no money in the purse, but it contained identification papers belonging to Mrs. Kaplan. The defendant voluntarily accompanied the police to the Kaplan home where Mrs. Kaplan identified the purse as the one taken from her kitchen. The defendant was then searched and $26 in bills were found between the two pairs of socks that he was wearing. The police also found Mrs. Kaplan's keys in the defendant's pockets and an eight-inch butcher knife under his trousers. Officer Carbray further discovered that the heel of the defendant's shoe matched a damp heel mark left on the table top adjacent to the opened window in the Kaplan kitchen.

The defendant testified that he lived about four or five blocks from the Kaplans, that he had left his home about

11:30 P.M. to purchase cigarettes and had found the purse while returning to his home. He also testified that he had stopped the police to tell them about finding the purse. He denied removing any money from the purse and testified that the money found between his socks was the remainder of an $80 check which he had cashed that afternoon. He further testified that he had undergone an operation several weeks before the burglary and that he would have been unable to climb through the Kaplans' window. It was stipulated that if the defendant's girl friend was called as a witness, she would testify that she was with the defendant until 11:45 P.M. on February 20, and that she knew he had money of his own at that time. It was further stipulated that another witness would testify that the defendant had $80 with him on the afternoon of the burglary.

The defendant contends that his conviction was based upon circumstantial evidence that did not exclude every reasonable hypothesis of innocence and that his alibi presented a reasonable doubt of guilt. Specific attention is directed to the defendant's physical incapacity at the time of the burglary and the police officer's failure to describe with particularity the heelprint found on the table top.

The evidence presented by the People tended strongly to negate the defendant's assertion that he had found the purse. The fact that the purse was carried under the defendant's coat and the fact that he had put the keys in his pocket were inconsistent with an innocent course of conduct. The exact amount of bills missing from the stolen purse was found concealed in the defendant's socks. The defendant's claim that he was physically unable to climb through the Kaplans' window was contradicted by Harry Kaplan's testimony that the window was "low enough to almost step through. You wouldn't have to climb. You could just put your foot right through the window." No claim is made that officer Carbray's testimony regarding the identification

of the heelprint on the table top was inadmissible. The weight to be given that testimony was for the trial court to determine.

In our opinion the trial court did not err in holding that the defendant's guilt was established beyond a reasonable doubt, and the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*