**People of the State of Illinois, Plaintiff-Appellee, v. Sanders J. Zeravich, Defendant-Appellant.**

**Gen. No. 49,850.**

First District, Third Division.

October 7, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Frederick F. Cohn, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Sanders Zeravich was indicted for the burglary of the dwelling of Bruce Borrelli and for the theft of currency belonging to Rosalie Borrelli. The defendant was tried without a jury, found guilty of burglary and sentenced to the penitentiary for a period of one to four years.

The defendant asserts that his conviction should be reversed because the indictment did not contain the address of the Borrelli residence, and that the State failed to prove him guilty beyond a reasonable doubt.

On January 23, 1963, at about 4:50 a. m., River Forest police officers Berry and Loftus observed an automobile with a frosted windshield come out from behind an apartment building at 1538–40 Park Avenue in that village. The temperature was 19 degrees below zero and it had just stopped snowing. They stopped the vehicle, questioned the driver, who was the defendant, and informed him that he was under arrest for driving with an obstructed windshield and for trespassing. They searched him and found $197 in bills consisting of one fifty-dollar bill, four twenties and some tens, fives and singles, and $5.65 in coins. When they asked him what he was doing in the rear of the building he denied being there and said that he was on his way to work and had turned on to Park Avenue to urinate.

The officers took the defendant to the police station and then they and Lieutenant Schoff went back to the

151

apartment building where they observed footprints in the snow leading to the rear entrance of 1538 Park Avenue. The prints came around the south side of the building to the front entrance, came out, went to the front entrance next door at 1540, entered there, came out and went around the north side of the building into the rear entrance of 1540 Park. The policemen then went into 1540 Park and tried various doors and found one unlocked. This was the rear door of the Borrelli apartment. They went in that door, down the basement stairs and found a little wicker basket and a purse with the contents strewn over the landing. Papers there had the name Borrelli on them and the officers rang their doorbell.

The Borrellis checked their apartment to see if anything was missing and identified the wicker basket, in which they kept pennies and small change, and Mrs. Borrelli's purse. It had contained from $190 to $200. She said it possibly had a $50 bill in it. She could not identify the $50 bill which the police showed her as the one which had been in her purse.

The defendant was wearing a pair of blue canvas shoes with crepe soles. Impressions of these shoes were made in the snow next to the footprints and the shoes were placed in the footprints themselves. It was officer Berry's opinion that the footprints in the snow and the impressions made by the defendant's shoes were identical.

When they returned to the station the officers questioned Zeravich. He told them where he worked and they verified that this was the truth. They asked him how he got into the apartment and he stated that he had tried the door knob, found the door open and walked in. After that he did not answer any more questions. Officer Schoff testified that when he accused Zeravich in private of the crime he remained mute. When Schoff asked him if he had used force to open Borrelli's door, he answered: "No, I just turned the knob and the door opened." He refused to answer further questions.

The defendant denied making any admissions to the officers. He testified that he drove behind the building to relieve himself and that the money he had was for his vacation. He said that 150 pennies, which were found on him, were part of his vacation money. He denied going into the apartment. He admitted that in 1958 he had been convicted of burglary and placed on probation.

Two other aspects of this case should be mentioned. The defendant was indicted in April 1963. On May 3, 1963, his pretrial motion to suppress the evidence was granted. The State appealed this ruling to the Supreme Court. Later in the month of May a replevin action was filed by the defendant in a suburban court and the money was returned to him. In January 1964 the Supreme Court reversed the trial court's order suppressing the evidence (People v. Zeravich, 30 Ill2d 275, 195 NE2d 612). The case was remanded for trial and the trial, which resulted in this appeal, commenced in March 1964.

The defendant's first point is that his conviction should be reversed because the indictment was defective in that it failed to give the address of the building allegedly burglarized. Recently, many cases involving the question whether the location of the crime was sufficiently particularized in the indictment have been before our courts of review. The appeals have been based principally upon either People v. Williams, 30 Ill2d 125, 196 NE2d 483 or on Ill Rev Stat, 1963, chap 38, sec 111-3. Section 111-3 is part of the 1963 Code of Criminal Procedure which became effective on January 1, 1964. Because the indictment in this case was returned in 1963 and the trial took place in 1964, we will examine the defendant's first point under both the Williams case, upon which the defendant relies, and the statute.

The Williams case was an appeal by the State from a trial court order quashing an indictment on the ground that it did not recite the street address of a building in Cook County where a burglary had been attempted. The

order was affirmed. It was held that an indictment was insufficient which described the building the defendant attempted to break into as: ". . . a certain building, to wit: a factory of Jacob Vondracek there situate. . . ." The court deemed the indictment deficient in defining the nature and cause of the accusation under section 9, Article 11 of the Constitution of Illinois. The court stated that the reasons a person charged with a criminal offense has the right to demand the nature and cause of the accusation are to enable him to prepare his defense and to plead the judgment as a bar to another prosecution for the same offense.

The Williams case was distinguished in People v. Clark, 59 Ill App2d 160, 208 NE2d 126, and People v. Bremer, 57 Ill App2d 436, 206 NE2d 795. In each case the identical contention was made as in the present case and in each case it was rejected. In Clark the indictment described the burglarized premises as the "dwelling house of Kenneth McAdory"; in Bremer as "a certain building, to wit: store of Norval W. Dawson and Stanley Dawson." In the Clark case the court said that the purposes for requiring specificity in an indictment—to enable the accused to prepare his defense and to permit him to plead the judgment in bar to a subsequent prosecution for the same offense—were inapplicable because the defendant was fully apprised before trial of the address of the burglarized premises, and the address was in the record so that, in the event of a subsequent prosecution, the record could be introduced in evidence to establish the defense of prior jeopardy. In the Bremer case the court gave the same reasons for not upholding the defendant's contention and in addition thereto said that the record revealed that the defendant proceeded to trial without making a motion to quash the indictment and did not subsequently move to arrest the judgment on the ground that the indictment failed to state the address of the burglarized premises. The court said that the failure

to do these things barred the defendant from raising the issue on appeal.

■ The Williams case is equally inapplicable to the present one. Zeravich knew he was accused of burglarizing the building on Park Avenue from the rear of which he drove his car; he conducted his defense on the merits and was fully aware of the charges against him; he is in no danger of double jeopardy because the address of the building was repeatedly testified to at the trial and the record will be available to bar another prosecution for the same offense; no motion was made to quash the indictment during 1963 and no attempt was made to dismiss it after the new Code of Criminal Procedure went into effect; no motion was made for a bill of particulars under either the former statute or the new code; and the oral motion in arrest of judgment was perfunctory: no grounds were specified and the motion was not argued. People v. King, 50 Ill App2d 421, 200 NE2d 411; People v. Starr, 50 Ill App2d 399, 200 NE2d 118.

■ The defendant's first point would also have to be rejected if it had been argued under section 111–3 of the present code. The pertinent part of the section provides: "(a) A charge shall . . . allege the commission of an offense by: . . . (4) Stating the time and place of the offense as definitely as can be done; . . . ." Ill Rev Stats 1963, chap 38, sec 111–3(a)(4). The case of People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323, would be dispositive of the point. In Petropoulos it was held that an indictment which fails to comply with the directive in section 111–3(a)(4) is not necessarily fatally defective. The court expressed the opinion that the holding in the Williams case had been rendered obsolete by the 1963 Code of Criminal Procedure. The court made a studied analysis of those sections of the new code pertinent to the instant appeal and pointed out that the provisions of the code indicated that an indictment could not properly be made the object of a motion to dismiss or a motion in

155

arrest of judgment for the reason alone that it did not fully measure up to the directives in section 111–3. The court called attention to section 114–1 of the code which lists ten grounds for dismissing an indictment and to section 116–2 which sets forth the requirements for a successful motion in arrest of judgment and noted that failure to comply with section 111–3 was not among them. The court concluded: "All the grounds for the various lines of attack on an indictment are set forth in meticulous fashion in the Code and leave no doubt in our minds that they are intended to be exclusive. . . . If a claimed defect in the indictment (such as the absence of street address) is not expressly authorized by the Code as a ground for a motion to dismiss, it is not available for that purpose."

We find no merit in the defendant's initial contention and we find none in his second, that he was not proved guilty beyond a reasonble doubt.

The defendant was seen coming out from behind the building that had been burglarized. His footprints entered the building. The footprints traced his steps from one building to another and from one entrance to another. The path taken by him and the purpose it suggests refutes his explanation for being behind the building. He had in his possession a quantity of money corresponding closely with that which had been stolen. This included 150 pennies and the evidence was that Borrelli customarily threw his pennies and small change into a basket; the basket had been emptied and tossed on the stairway. The defendant's explanation for the pennies and the rest of the money found on him at 4:50 in the morning taxes credulity. Upon questioning by police officers at two separate times he admitted being in the building, trying the doorknob, finding it unlocked and walking in. His admissions merely added to proof of his guilt.

156

██ ██ The return of the money to the defendant in the civil proceeding is in no way binding in the criminal case. Two wrongs (the erroneous order suppressing the evidence and the judgment in the replevin suit) do not make a right. The unappealed replevin judgment precluded Mrs. Borrelli from recovering her money but it did not preclude the State from using the evidence of that money in the prosecution of the crime.

The proof in this case was an intermingling of direct and circumstantial evidence which led to but one hypothesis, that of guilt. None of the incriminating facts can be logically explained consistent with the defendant's innocence. The judgment is affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.