People of the State of Illinois, Plaintiff-Appellee, v. Thaddeus Kozlowski, Defendant-Appellant.

Gen. No. 51,610.

First District, Second Division.

May 21, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Defendant, Thaddeus Kozlowski, was convicted, in a bench trial, of the offense of burglary and sentenced by the court to a term of imprisonment of from not less than one (1) nor more than six (6) years in the State Penitentiary. Defendant prosecutes this appeal assigning alternatively as his theories on review: (1) that the court below erred by allowing a witness to testify who had remained in the courtroom in violation of an order excluding all witnesses; (2) that defendant was prejudiced by the admission into evidence of a footprint specimen taken from the scene of the burglarized premises; and (3) that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

The scene of the burglary was the J. E. Stringfellow Company, a printing establishment having its offices on the fifth floor of an eight-story building located at 440 North Wells Street in the City of Chicago. From the main floor of this structure there existed but one means of ingress and egress, that being the front entrance. Two stairways inside were the sole means of access to the upper levels, being located to the front and rear re-

spectively of the ground floor and linked together by a common hallway which joined with the main door. An adjacent service elevator was out of operation on the date in question. The back stairway was covered with dust and was described as a fire exit seldom used by the building personnel. The two stairways however, above the ground level, did not share such a common hallway. Access to each could be gained only through the front and back doors respectively of the firms located above the first floor. The building itself housed numerous employees and opened generally at 6:00 a. m.

Russell Kosh, an employee of a company on the sixth floor, testified that at approximately 6:10 a. m. on the morning of September 28, 1965, he heard a pounding noise emanating from the Stringfellow premises on the floor immediately below. Kosh proceeded downstairs and assumed a position outside the Stringfellow firm's front door to listen, asking Herman Buck to summon the police. The witness remained at his station until the arrival of Police Officer James O'Donnell about ten minutes later. He observed that the door was locked and bore no visible signs of tampering. Neither Kosh nor any other State's witness had occasion to actually see the intruder on the fifth floor.

O'Donnell joined Kosh but could not gain entrance to the offices, proceeding back down the front stairs to the main floor at which juncture he observed defendant passing out the front door. Defendant was arrested, searched and found to be in possession only of six half-dollar coins of the Franklin-Bell variety and a set of personal keys. Defendant offered to explain his presence in the building, stating that he was simply in search of employment. Testimony however indicated that there had been no help wanted signs posted nor were any of the companies during this period advertising for male employees.

Frank Slatterly testified that he observed a quantity of half-dollar coins missing from his desk in the String-

fellow office complex. The witness purported to be able to identify the coins seized from defendant as "similar" to those pilfered from his desk because each was of the issue bearing engravings of Benjamin Franklin and the Liberty Bell which he had made a habit of accumulating. When asked how many coins were taken, Slatterly could only fix the amount at, "probably six or seven dollars." He, however, stated that he could not be sure.

Herman Buck stated that after notifying the police, he stationed an employee, L. D. Blue, at the foot of the rear stairway to intercept anyone attempting to leave the upper portions of the building. Blue testified that at approximately 6:20 a. m. defendant descended these stairs walking casually past him through the hallway towards the front door at which point he was seized by Buck and Officer O'Donnell. Blue, Buck and O'Donnell each identified defendant at trial as the same man so observed.

A subsequent examination of the burglarized offices revealed that the company safe had been opened by knocking off the dial. While no instruments of a blunt nature were found on defendant's person, testimony disclosed that a variety of tools were kept on the burglarized premises to service the firm's printing machinery. O'Donnell testified further that he had discovered an "obvious" footprint in the accumulated dust near the company's rear fire door. A specimen of the print was taken by either the officer or a crime laboratory technician and compared to one of the work shoes then being worn by defendant. O'Donnell stated that there was a "very close similarity" between the two, without setting forth in what respect he based his judgment. He testified that the crime laboratory conducted an examination and was of the same opinion. The officer conceded that there were other footprints in proximity to the general area of the rear fire door. The footprint sample and shoe were subsequently admitted into evidence over objection by defendant.

Immediately following this account by O'Donnell, the State called Hugo Aranda, a Stringfellow employee, to testify. It would appear that the witness had arrived late at the trial and was ignorant of the court's order excluding all witnesses entered at the onset of proceedings. Aranda, by his own admission, had been present in court for about 15 minutes and overheard the latter portion of the officer's testimony relative to his discovery of the footprint. The witness was permitted to testify over defense objection, however. Aranda's direct testimony was, for the most part, confined to a corroborative description of the condition of the burglarized premises. He, however, was able to add the observation that a block of wood wedged in the rear fire door to bar entry from without had been dislodged and was apparently missing. Aranda explained that such was a security measure because fire department regulations required that the fire exit be otherwise kept unlocked. On cross-examination, the witness conceded that to his knowledge there were five keys to the Stringfellow offices then outstanding. In response to further inquiry, Aranda gave an account of the discovery and location of the footprint which was in substantial conformity with the testimony of O'Donnell.

Testifying as the only witness in his own behalf, defendant adhered to his prior assertion that he had simply entered the building shortly after 6:00 a. m. that morning looking for employment. Defendant claimed that he was informed that the "boss" was not at work and was in the process of leaving when he was arrested. Defendant denied that he journeyed above the main floor level of the building.

 Responding to defendant's first contention on appeal, the lower court's decision as to whether to permit one who had remained in court in violation of an order excluding all witnesses is a determination entrusted to the sound discretion of the trial judge. Absent some showing of a clear abuse of that judicial prerogative, the

■

judgment made by the trial judge will not be disturbed on review. People v. Marshall, 74 Ill App2d 472, 221 NE2d 128 (1966). Having examined the record before us, we are of the opinion that defendant's claim to prejudice from that decision is factually untenable.

Aranda's presence in the courtroom was both innocent and confined to a relatively brief period. By the witness' own admissions, the trial judge was made readily cognizant of those portions of testimony he had overheard as it would tend to affect the court's determination of credibility on those same subjects. Significantly, the most damaging segment of Aranda's testimony for which defendant complains; i. e., the footprint evidence, was elicited by the inquiries of defendant's own counsel on cross-examination. Limiting our discussion then to the context of direct examination, Aranda's account was simply that of a corroborative description of the general interior of the burglarized premises, an element of the case which had been established by the prior testimony of witnesses in addition to that of O'Donnell. Nor does it appear that O'Donnell's prior testimony operated to suggest, or even influence, Aranda's observation indicating that entrance had been gained by a tampering with the rear door, particularly in view of other evidence demonstrating that the front of the premises were not molested. Accordingly, defendant has failed to convince this court wherein he was prejudiced by that testimony.

■ While the State was unable to adduce direct testimony of defendant's presence on the fifth floor, we think the record fairly reflects sufficient credible circumstantial evidence to support his conviction beyond a reasonable doubt. Defendant admitted to being in the building during the critical time period, offering an explanation which in view of the attendant circumstances taxed the limits of credulity. Defendant's denial of hav-

ing journeyed above the ground floor was directly contradicted by the positive identification of the witness, Blue, who pointed out defendant as the man he observed descending the rear stairs from the upper levels of the building. At this same point in time, Kosh was standing guard outside the front entrance to the Stringfellow offices. Seconds later, defendant was intercepted by O'Donnell and Buck exiting from the building.

■ The physical descriptions of the structure housing the burglarized premises were such as to convincingly tie together this sequence of events. There is little question but that the offices were entered and exited from the rear fire door. Although it would appear that a scattering of employees had already arrived at the building, the floor occupied by the Stringfellow firm was then vacant save the intruder. Absent a common hallway above the ground level, defendant's use of the rear stairway strongly indicated his presence at the back of some upper floor establishment. Moreover, defendant was found to be in immediate and exclusive possession of a quantity of coins closely resembling those taken from Slatterly's desk within the confines of the victimized premises, itself, in absence of contrary circumstances, sufficient to give rise to an inference of guilt. People v. Franceschini, 20 Ill 2d 126, 169 NE2d 244 (1960).

■■ Defendant however renews his objection to the admissibility of these coins to facilitate that end. We cannot agree. While there existed a disparity between the number of coins missing and the number found on defendant's person, it is manifest that the witness, Slatterly, could not at all be certain as to the specific quantity of coins taken. Furthermore, this discrepancy, if at all, concerned itself with a difference in quantity and not a difference in kind. In view of defendant's contemporaneous possession of coins of the same denomination and general description as those recently stolen, we must deem

the disparity of insufficient moment to have either adversely affected their relevancy to the point in issue or to have raised a reasonable doubt as to his guilt. People v. Lagios, 51 Ill App2d 440, 201 NE2d 245 (1964). In burglary prosecutions, the precise identification of the property taken is inconsequential if, as in the case of money, the character of the property is such that an exact identification is impossible. People v. Brancztet, 59 Ill App2d 381, 208 NE2d 416 (1965). The description of the particular denomination and issue of the coins missing answered as concisely as possible to those seized from defendant within moments after their taking. Defendant, it would appear, had nothing else in his possession at the time with the exception of a set of personal keys. The link we feel was sufficient to warrant the trial judge's admission of the half-dollars into evidence. People v. Sellers, 30 Ill2d 221, 196 NE2d 481 (1964); People v. Johnson, 88 Ill App2d 265, 232 NE2d 554 (1967); and People v. Waller, 85 Ill App2d 55, 229 NE2d 298 (1967).

■ Lastly, defendant submits that the footprint and shoe exhibits were erroneously admitted into evidence without the proper foundation. Relying upon the cases of People v. Kelly, 84 Ill App2d 431, 228 NE2d 561 (1967) and People v. Zammuto, 280 Ill 225, 117 NE 454 (1917) as his authority, defendant predicates his argument upon the absence of evidence suggesting the recent origin of the print, as well as the incompetent lay opinion testimony of Officer O'Donnell to establish the alleged similarity between the two. It is an argument we think inappropriately taken on the facts of the instant case.

In the Zammuto case the testimony of the lone eyewitness had been severely discredited, and the defendants interposed convincing corroborative alibis. Examined in context, the court's adverse comments relative to the State's use of a shoeprint comparison to otherwise facili-

tate the identification of the accused, Caltagerone, was a criticism notably directed to the credibility and not the competence of that evidence, the court citing the absence of some peculiarity about the print discovered in the snow in an area where persons other than the guilty party may have had occasion to walk.

In the instant case, the footprint was found at or near the point of unlawful entry, an area leading out to the rear stairway which defendant was seen traversing within minutes after Kosh overheard the pounding noise. This stairway was seldom, if ever, used by the building personnel. Unlike the Kelly case, simply by virtue of the footprint's "obvious" presence in the otherwise dust covered area, we think its recent origin could have been fairly concluded by the trial judge. While as defendant argues, the officer did make mention of other footprints in proximity to this area on redirect examination, the record is silent as to whether these prints were or were not the same as the one from which the specimen was taken. In view of these circumstances and the lack of foot traffic at that door, we cannot say that O'Donnell's failure to describe the basis for his observation with particularity was a defect of sufficient force to foreclose upon the introduction of these exhibits into evidence. People v. Merrit, 29 Ill2d 423, 194 NE2d 292 (1963).

The officer stated only that the footprint and impression left by defendant's shoe were closely similar based upon what he personally observed. He did not, at any point, purport to represent by an opinion that the two footprints were, in fact, one and the same. Accordingly, the matter was one affecting only the credibility to be attached by the court to the witness' observation, which determination we are not justified in invading on the record that is before us. People v. Zeravich, 64 Ill App2d 150, 212 NE2d 282 (1965). While again the footprint evidence was circumstantial in nature, the proofs ad-

duced below left room for but one reasonable conclusion, that being the guilt of the accused.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and McNAMARA, J., concur.