THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE ROBBINS, Defendant-Appellant.

(No. 72-248;

Third District—July 31, 1974.

C. Don Weston, of Macomb, for appellant.

Henry D. Sintzenich, II, State's Attorney, of Macomb, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

George Robbins was indicted on a charge of burglary. He was arrested in connection with the offense on January 24, 1972, and was held in custody continuously until the date of his trial. He was found guilty by a jury and was sentenced by the Circuit Court of McDonough County to a term of not less than 4 years nor more than 9 years.

On the day before trial was to begin defendant filed a motion requesting discharge under the provisions of section 103—5(a)(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, § 103—5(a)(d)) alleging that he had been in custody for 121 days. The motion was denied by the trial court. Defendant contends on appeal that this was in error.

██ The defendant first appeared in court on March 29, 1972, for arraignment. On that date he asked for and was granted a continuance to April 12, 1972, in order to prepare motions. The State objected, asking for immediate arraignment, but was overruled. The factual situation in this case is similar to that in *People v. Gulick*, 7 Ill.App.3d 427. It is obvious that a legal impediment to trial existed from March 29, 1972, to April 12, 1972. The prosecution was in no position to demand trial during that period and the period of time contemplated by the 120-day rule then began to run from April 12, 1972. Trial was held well within the 120 days, and the trial court was correct in its ruling. A continuance granted at the request of the defendant is a delay "occasioned by the defendant." *People v. Young*, 46 Ill.2d 82, 85.

After laying a foundation for the admission of exhibits the State rested its case without having moved for the introduction of the exhibits into evidence. Immediately thereafter the State moved for their admission. The motion was allowed over objection by the defendant, who now contends this to be reversible error.

██ Whether either party may introduce evidence that he should have introduced at an earlier stage of trial rests largely in the discretion of the court (*People v. Kelly*, 378 Ill. 273), and this discretion will not be interfered with except where clear abuse or prejudice to the defendant is shown. (*People v. Franceshini*, 20 Ill.2d 126.) Defendant has cited *People v. Cross*, 40 Ill.2d 85. *Cross* allowed the State to re-open to make proof of ownership of a building in a burglary case after defendant had made a motion for a directed verdict pointing out that the State had failed to make such proof. Here the motion to admit the exhibits was a formal matter and as in *Cross* could not have taken the defendant by surprise. We find no prejudicial error in the ruling of the trial court.

Defendant further objected to the admission of certain physical exhibits contending that the proof failed to connect the exhibits with the defendant or with the crime and, further, he contends that the evidence was insufficient to establish guilt beyond a reasonable doubt.

Jack Guarin testified that he was a garage owner and did business under the name of Guarin Standard Service and Cafe. On January 22, 1972, George Robbins, the defendant, came into the garage at about 5:30 or 6:00 P.M. complaining about a car which defendant had purchased from an employee of the witness. The witness identified exhibits 1, 2, 3, 4 and 5 as tools belonging to him and being in his garage on January 22 when he locked the doors and went home. He also identified a Fram filter box (exhibit 7) and a catalog (exhibit 8) as having been on the grinder in the building at that time at specific locations. On Tuesday or Wednesday, January 22, 1972, Mr. Guarin first met Mr. Robbins when

he had sold him three tires and a wheel. They had then had a conversation about the garage doors being wired to a burglar alarm.

Early Sunday, January 23, 1972, a window was discovered broken out of the garage and at about 8 o'clock the witness went down to see what was missing and found the safe open, the money gone. The tools (exhibits 1 through 5) were missing. The Fram filter box and the catalog had been moved to the floor but were still in the building. These two exhibits were delivered to the sheriff. There was a foot print on the Fram filter box which was not that of the witness.

A few days later the witness went with the sheriff and deputies to a residence at 215 E. Walker St., in Macomb, Illinois, where he identified the tools (exhibits 1 thru 5) found in the basement as his.

The sheriff, John Bliven, identified the tools as first seen by him at defendant's house and testified that he put them in his evidence locker after tagging each tool. Exhibit 6 was identified as a box returned from the FBI Laboratory and it had contained various exhibits which had been sent to the FBI for examination. Exhibits 9 and 10 were the boots removed from defendant when he was arrested. Exhibit 11 was the registered mail receipt received when the package was mailed to the FBI Laboratory. Exhibits 12 and 13 were two boots found on a shelf on a stairway going to the basement of defendant's home.

The next witness to testify was Thomas A. Delaney, an agent of the Federal Bureau of Investigation, who since 1953 specialized in examination of shoe prints, a technique similar to fingerprint identification. He had compared two sets of boots with the full print on the Fram box and the partial print on the catalog. He made a positive identification as to the source of the shoe print on the box stating that he was of the opinion that the print was from a pair of boots marked exhibits 9 and 10 (the boots defendant was wearing at the time of his arrest). He could not make a positive identification of the partial print on the catalog due to lack of clarity in the print. He had received the exhibits by registered mail from the sheriff in exhibit 6 (box). Exhibit 16 was an inked impression of the heel of exhibit 10, and exhibit 17 was the inked impression of the sole of exhibit 9. The impressions were made by Mr. Delaney.

Stanley Carman, a deputy sheriff, next testified that permission was given by defendant to search his house and that exhibits 1-5 (the tools) were found there in the basement. That an a.w.o.l. soldier, Robert Mandel, and a girl, Julie, were in the house.

Jack Thurman, another deputy, testified that exhibits 9 and 10 were the boots defendant was wearing when arrested and that exhibits 12 and 13 were another pair of boots found in the basement of defendant's home.

Howard Barry, another deputy, testified that he and the sheriff went

to the garage the morning of the break-in, saw the window broken and found various footprints, including those on exhibits 7 and 8, that later at the defendant's house Guarin immediately said "those are my tools" and the deputy further identified exhibits 9 and 10 as the boots the defendant took off in his presence.

Defendant contends that the trial court erred in admitting exhibits 1, 2, 3, 4, 5 (the tools), 7 (the Fram filter box with a footprint on it), 8 (the catalog with a partial print on it), 9 and 10 (defendant's boots), and 16 and 17 (the impressions made by Mr. Delaney).

People's exhibits 1 through 5 were identified by the owner as the fruits of the burglary. The defendant contends that since Robert Mandel lived in his house, that an a.w.o.l. soldier was there and a girl, Julie, was there that there could be no exclusive possession by defendant and therefore the evidence relating to them was inadmissible as having no probative force in connecting defendant with the crime. If this was the only evidence in the case we would agree. In the cases cited by defendant there was no evidence which placed the accused at the scene of the crime as here.

We are not here dealing with the rule permitting an inference or presumption of guilt from "exclusive" possession of recently stolen property. (Annot., 51 A.L.R. 3d 727 (1973).) We are concerned with admissibility of evidence. No instruction upon the inference arising from exclusive possession of recently stolen property was given in the instant case.

■■ On a trial for burglary, evidence of the fact that defendant had the opportunity to place the stolen articles where they were found shortly after the burglary is a circumstance, which, taken in connection with other circumstances in proof, tends to establish his guilt, and the fact that other persons had like opportunity only weakens the force of such circumstance but does not render it incompetent as criminating evidence. (*Padfield v. People*, 146 Ill. 660.) If the place where the stolen goods were found was accessible to others capable of stealing, an inference of guilt cannot be drawn, though the fact is entitled to consideration in connection with other facts in the case. (*Watts v. People*, 204 Ill. 233, 246.) Evidence that accused was in possession of the stolen property at any time after the larceny is admissible even though possession is not sufficiently recent or exclusive to raise the presumption that accused was the thief. 52A C.J.S. *Larceny* § 126 (1968).

■■ Where the evidence is circumstantial and there is no evidence connecting the accused with the crime charged, exhibits found in the neighborhood of the home of the accused are not admissible in evidence, but where the circumstances have some tendency to connect the evidence to the crime in question it is admissible. (*People v. Smith*, 63 Ill.App.2d

369, 378.) We believe that the circumstances of this case sufficiently connected the tools with both the defendant and the crime to render them relevant and admissible.

Defendant further contends that evidence of the boot prints was admitted in error first because there was not a positive identification as to the source of the print on exhibit 8; second, because no witness was able to testify that defendant was wearing the boots at the time of the burglary and that there was no testimony that would give rise to the inference that defendant owned the boots.

■■ The correspondence of footprints found at the place of commission of, or in connection with, a crime, with the shoe of one accused of the crime is admissible in evidence to identify the accused as the guilty person. A witness may testify in a criminal prosecution as to human tracks found at the place of the crime and as to their size, location, or any peculiarity that he may have observed about them. Similarly, the description and measurement of tracks at the scene of the crime, which correspond with the shoes worn by the accused and have been introduced in evidence, are competent. Evidence of prints at the scene of the crime has been held admissible apart from any comparison with those of or connected with the accused for the purpose of describing the scene of the crime. 29 Am. Jur. 2d *Tracks and Footprints* § 377 (1967); Annot., 31 A.L.R. 204 (1924), 35 A.L.R.2d 856 (1954); 5 Am. Jur. *Proof of Facts* 217, Footprints, Proof No. 1 (1960); 22A C.J.S. *Criminal Law* § 616(3) (1961); *People v. Hanson*, 31 Ill.2d 31, 40; *People v. Kozlowski*, 95 Ill. App.2d 464, 472.

■■ Although the expert refused to make a positive identification as to the source of the print on exhibit 8 he did testify that the patterns in exhibit 8 corresponded with the patterns in the sole and heel of defendant's boot, and that the impression of exhibit 8 conformed in size and design with the pattern in the shoe. He further testified that he couldn't eliminate the possibility that the print could have been made by one of the boots. In order to be admissible in evidence, identification need not be positive. Any uncertainty of identifying evidence, and the method of identification, go to the weight of the evidence, rather than to its admissibility. The trial judge having determined that the evidence had some probative value, it became a question for the jury to determine its weight. *People v. Scott*, 29 Ill.2d 97, 113.

■■ The argument that no witness was able to testify that he knew that defendant wore the boots at the time of the crime again goes to the weight of the evidence and not to its admissibility. The argument of defendant confuses the distinction between the admissibility of evidence and its probative value. *People v. Scott, supra.*

The argument that there was no testimony that would give rise to an inference that defendant owned the boots overlooks the undisputed fact that defendant was wearing the boots when arrested.

■■ We find no error in the admission of the exhibits by the trial court.

■■ Defendant finally contends that he was not proved guilty beyond a reasonable doubt in that the evidence does not exclude every reasonable hypothesis of innocence. A conviction may be based on circumstantial evidence. The fact that the circumstantial evidence relied upon must not give rise to any reasonable hypothesis under which the defendant could be innocent of the crime charged does not mean that the trier of fact is required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. (*People v. Huff*, 29 Ill.2d 315; 14A Ill.L. & Pr. *Criminal Law* § 433 (1968).) We are of the opinion that there was sufficient evidence to establish defendant's guilt beyond a reasnable doubt.

The judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

STOUDER and ALLOY, JJ., concur.