THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORVEL HOLMES, Defendant-Appellant.

First District (3rd Division)   No. 60591

Opinion filed August 19, 1976.

James J. Doherty, Public Defender, of Chicago (Lance R. Miner, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Donald M. Devlin, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:
Defendant, Norvel Holmes, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of the offense of attempted armed robbery. (Ill. Rev. Stat. 1971, ch. 38, par. 8—4.) He was sentenced to a term of 3 to 9 years in the State penitentiary. Upon appeal defendant contends:
　　(1) The identification evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt;
　　(2) Improper statements made in the prosecutor's final arguments deprived him of a fair trial;
　　(3) He was erroneously denied discovery of statements made to the prosecution by defense witnesses;
　　(4) Two defense exhibits were erroneously excluded from evidence; and
　　(5) He was denied a fair trial as a result of an improper and independent investigation by the jurors into certain facts of the case.
A summary of the facts follows.
Defendant was charged by indictment with committing the offense of attempted armed robbery against Patricia Maciejewski on March 31, 1972. Prior to trial defendant moved to suppress his identification by the complaining witness at the Cicero, Illinois, police station on the basis that an impermissibly suggestive pretrial identification procedure was utilized. That motion was granted by the trial court.
At trial Patricia Maciejewski testified. At approximately 1:30 on the morning of March 31, 1972, she returned from work and drove into the alley behind her home to put her car in the garage. She took a broom from the garage and swept snow away in order to open the garage door. She then turned on the light and drove the car into the garage. As she started to close the door a man stepped out from the alley and demanded money. He was black, of average build and height, and was wearing a corduroy car coat with a light-colored collar; a dark blue ski mask with a stripe around the forehead covered his face, but his skin color could be seen

through the eye opening. His left hand was covered with some type of cloth material and held a small butcher knife. The witness screamed, pulled down the garage door, ran into the house, and from the back porch saw the man running down the alley. She called the Cicero police and gave them a description of the man. The police later arrived at her home with a man in custody; they showed her a ski mask, a broken knife and a pair of socks they had taken from the suspect. She viewed the suspect in the rear of a patrol wagon and later identified him at trial. She stated that the ski mask and corduroy coat were similar to those worn by her assailant, but she could not identify the broken knife because she had seen only the blade of a knife during the incident. The officers had defendant make shoeprints in the snow next to prints near her garage door. The witness testified that the left shoeprint made by defendant matched a left print where her assailant had stood, both in size and in a marking on the heel which consisted of a disc emblem with a line extending through it.

Officer Ronald Liss of the Cicero Police Department testified. He and his partner, Chester Hiller, were on patrol when they received a radio report at 1:50 a.m. concerning the attempted armed robbery of Patricia Maciejewski. After receiving a description of the offender they drove south on Austin Avenue and passed a car heading north, driven by a black man wearing a coat with a light-colored collar. At trial Officer Liss identified defendant as the driver of that vehicle. Liss made a U-turn and curbed the car on Austin Avenue near Cermak Road. As the car came to a stop Officer Hiller noticed that something was thrown from the passenger window of defendant's car. Liss observed a broken knife on the floor of the front of the car and he noticed that defendant was not wearing socks. Officer Hiller found a ski mask on the curb near the passenger side of defendant's car. Defendant was placed under arrest and taken to the victim's home where he was requested to make shoeprints in the snow next to existing shoeprints alongside the garage. The left heel of his shoeprint matched the left heel of one of the previously made shoeprints in that each had the same crack-like indentation.

Officer Chester Hiller testified. As defendant's car was stopped he saw something thrown from the passenger window. He walked to the car and told defendant he wanted to talk about an attempted robbery. As defendant got out of his car Hiller noticed he was not wearing socks. He said he must have forgotten to put them on that evening. He first told Hiller that he was coming from Elgin State Hospital but later stated he had come from the Corn Products Plant in Summit, Illinois. Hiller then walked around the car to the passenger side and found a ski mask lying on the ground. The mask, which he identified at trial, was navy blue with white rings around the eyes and red and white stripes around the top. Defendant was placed under arrest and advised of his rights. Officer Liss

then found on the floor in front of defendant's car a knife which had a 5-inch wooden handle with about an inch of broken blade remaining. Later, Officer Hiller found a pair of socks in defendant's coat pocket. The officers, with defendant in custody, went to the Maciejewski home where Patricia Maciejewski was shown the ski mask, the broken knife and the socks which had been recovered. She told Officer Hiller that based upon defendant's build and his coat, she was pretty sure he was her assailant. She pointed out shoeprints her assailant had left in the snow, and Officer Hiller caused defendant to make shoeprints for comparison. He testified that the prints made by the heel of defendant's left shoe matched the print of the assailant in a crack extending from the brand name logo toward the corner of the heel; further, that the brand name on each shoeprint was Florsheim. Defendant was then taken to the Cicero police station.

On cross-examination Officer Hiller could not recall testifying at a preliminary hearing that the ski mask, broken knife and socks were not exhibited to the complainant before defendant was taken to the police station. He admitted that nothing was done to preserve the shoeprints which had been the subject of comparison after defendant's arrest. Finally, he denied that defendant had been the subject of beatings or any other form of maltreatment at the station.

Defendant testified in his own behalf. He was returning from a drive through his old neighborhood in the vicinity of 22nd Street and Ogden Avenue when he was stopped by the police. His minister advised him to leave his house whenever he had an argument with his wife, and after an argument with his wife that evening he had decided to go for a drive. The police curbed his car on Cermak Road, rather than on Austin Avenue. He denied throwing a ski mask from his car and also denied owning a ski mask at that time. He told Officer Hiller that he worked at Tinley Park Mental Health Center and showed his identification card. The police took his keys and recovered a broken knife from a fishing tackle box in the trunk of his car. The knife had been broken on his last fishing trip of the season. He was wearing Italian shoes at the time of his arrest with a brand name of "Seigard." He did not own or wear Florsheim shoes at that time. Prior to being taken to the police station he was taken to the Maciejewski home and required to make shoeprints in the snow in the alley. At the police station he was beaten by Officers Hiller and Liss and a third policeman. They removed his shoes and socks and "stomped" on his feet. When his socks were returned to him they smelled of urine. Later that morning other officers took him to the emergency room of MacNeal Hospital for treatment of injuries incurred in the beatings.

Defendant identified an emergency bill from MacNeal Hospital dated March 31, 1972, as well as photographs of his face and feet taken by Reverend Thomas Wilson on the same date. The bill and photographs

were admitted into evidence. Defendant also offered into evidence his identification card from the Tinley Park Mental Health Center and the shoes he testified he was wearing on the day of his arrest. On objections by the prosecutor the identification card was excluded on the ground of relevancy, and the shoes were excluded as not timely offered in that no notice of their planned introduction was given to the prosecution. In rejecting the shoes the trial court also questioned their relevancy because they had not been demonstrated to be in the same condition as on the day of defendant's arrest.

Defendant then moved for discovery from the State of any statements taken of defense witnesses to be used in impeachment or in any other manner. The prosecutor objected that the memoranda made as to the witnesses were not substantial verbatim reports of oral statements made and were therefore not subject to discovery. After examining the memoranda *in camera*, the trial court denied defendant's motion.

Defendant's sister, Doris Holmes, his brother, Albert Holmes, and Reverend Thomas Wilson testified as to defendant's physical condition following his release on bond on March 31, 1972.

In closing arguments the trial court sustained defense objections to the prosecutor's remarks that people like Patricia Maciejewski can never forget the experience of such an offense; that if the evidence did not establish defendant's guilt, then no one the prosecutor had ever convicted deserved to have been found guilty; and that if defendant was not found guilty the jury might ask themselves who will be the next armed and masked man on the streets after defendant says that his attorneys beat the rap for him. The prosecutor then argued that Patricia Maciejewski had identified the broken knife recovered from defendant's vehicle. The trial court sustained defendant's objection that the victim had been unable to identify the knife. The prosecutor also argued in two instances by posing the question "If he [defendant] didn't do it, who did?"

The jury returned a verdict of guilty and the trial court sentenced defendant to a term of 3 to 9 years in the State penitentiary. Defendant then filed a motion for new trial which was premised in part upon the allegation that some members of the jury had visited a Florsheim shoe store for the purpose of inspecting shoe heels of that brand name to determine their design, and that the results of this independent investigation were communicated to the other jurors and discussed in their deliberations. The allegation was further set forth in the affidavit of one of the defense attorneys who averred that after the verdict was returned he had a conversation with a specified juror who related the information in the presence of the defense attorney, one of the prosecutors, and the rest of the jurors. During argument on the motion the defense attorney stated that in his communication with the juror he had

been given the indication that other members of the jury had discounted the results of the independent investigation. Subsequently, the trial court denied the motion for new trial, as well as a motion for a hearing on the independent investigation undertaken by some members of the jury. Defendant then instituted the present appeal.

■■ First, defendant contends that the identification evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt. He argues that the complaining witness was unable to identify him at trial as the offender, and that her testimony and that of the arresting officers was so lacking in credibility that it nullified the circumstantial evidence introduced to establish defendant's identity as the offender. Although it is true the complaining witness could not identify defendant as other than the suspect who was brought to her house by the police, the lack of an identification by the victim is not necessarily fatal but is yet another factor to be weighed by the jury in its deliberations. *People v. Thompson* (1974), 18 Ill. App. 3d 613, 310 N.E.2d 504.

■■ We believe that in the instant case the circumstantial evidence which was presented to establish defendant's identity was sufficient, if accepted by the jury, to prove his guilt beyond a reasonable doubt. Patricia Maciejewski testified that her assailant wore a ski mask over his head during the commission of the offense; as a result, positive facial identification was not possible. She stated, however, that the assailant was of average build, black, wearing a corduroy car coat with a light-colored collar, and that the ski mask was dark blue with a stripe around the forehead. She also stated that there was some kind of cloth material on his left hand. Her descriptions, both of the clothing and physical appearance, matched those of defendant who was taken into custody a short time later in such proximity to her home to have corresponded in time with the commission of the offense.

■■ Officer Hiller testified that a pair of socks was found in defendant's coat pocket. He also testified that as defendant's car was curbed he saw an object thrown out of the window. The object was a dark blue ski mask which the victim identified at trial as similar to the mask worn by her assailant. When taken to the victim's home by the police defendant was required to make shoeprints in the snow. Patricia Maciejewski and the two arresting officers each testified that defendant's shoeprint had the same indentation on the left heel as a shoeprint found near the door of the garage. While the imprints were not preserved, that fact, along with the admitted lack of expertise of the witnesses in making such comparisons, goes only to the weight of their testimony and not its admissibility. (*People v. Robbins* (1974), 21 Ill. App. 3d 317, 315 N.E.2d 198; *People v. Kozlowski* (1968), 95 Ill. App. 2d 464, 238 N.E.2d 156.) In cases involving circumstantial evidence, each link to the crime need not

be proved beyond a reasonable doubt if the evidence as a whole is sufficient to satisfy the jury of the accused's guilt beyond a reasonable doubt. (*People v. Marino* (1968), 95 Ill. App. 2d 369, 238 N.E.2d 245.) Here, the aggregate of the circumstantial evidence was of that character and we hold it was sufficient to prove beyond a reasonable doubt defendant's identity as the offender.

■■ Defendant attacks the credibility of the complaining witness and the arresting officers and argues that their testimony was unworthy of belief by the jury. He asserts that discrepancies between the testimony of the complaining witness and the arresting officers at trial and at the preliminary hearing renders their credibility highly suspect. The weight and credibility to be afforded a witness' testimony is a determination for the jury as the trier of fact, and unless that determination is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of an accused's guilt, the verdict will not be disturbed on appeal. (*People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227.) We have reviewed the asserted discrepancies and find that they are not of such nature to render the testimony of the witnesses either unreasonable, improbable or unsatisfactory.

Defendant additionally argues that the alleged beating he received at the hands of Officers Hiller and Liss indicates that they had a motive to testify falsely to insure his conviction. Although the police officers denied any form of mistreatment, the record reveals substantial evidence was presented by the defense to establish police misconduct. Defendant testified that the officers struck and beat him at the station, placed a waste basket over his head, stomped on his foot and toes, kicked him in the groin, and that he was taken to the hospital by two police officers. A stipulation was entered that if Dr. Jorge Paez was called he would testify that the emergency room records of MacNeal Hospital would disclose that on March 31, 1972, between 9:20 and 11:30 a.m., defendant was treated and examined for contusions of the forehead, lip area and groin, and for abrasion of the dorsal aspect of the left foot. Reverend Wilson testified that on April 1, 1972, at 2 a.m., he saw defendant at the station and took him home. He observed that defendant's face was bruised, cuts on his face, blood on his lips, feet swelling, and that he walked with a limp. Photographs taken by him of defendant's face and feet were received in evidence. A further stipulation was entered that Doris Holmes and Albert Holmes, if called, would testify that they observed defendant's bruises shortly before noon on March 31, 1972, at the Cicero station.

■■ In addition, following a poll of the jurors as to the verdict, the trial court made an extended statement which emphasized the question of police misconduct, and stated in particular: " * * * And it was a very

difficult case for you. I am sure it was difficult because this case involved, in this Court's opinion, one of the most carefully documented and most gross examples of police brutality and misconduct that this Court has seen since it was on the bench." Yet, even where maltreatment by the police is established, that fact does not of itself dictate a verdict on acquittal. Whether defendant was mistreated by police does not bear upon the issue of his guilt of the offense charged. The contradiction of testimony on this point only created a question of credibility for the jury to resolve, and that question was properly left to their determination. *People v. Jackson* (1973), 13 Ill. App. 3d 753, 301 N.E.2d 112 (abstract opinion).

■■ Defendant contends that the closing argument of the prosecutor was so improper as to deny him a fair trial. In his argument the prosecutor commented on defendant's culpability as well as the nature of the offense and its dire consequences on society in general, and specifically on the complaining witness. Defendant's objections to the foregoing were sustained by the trial court. However, even if they had been overruled, we do not feel that any error would have resulted since the remarks were within the realm of fair comment. It does not transcend the bounds of fair comment for a prosecutor to delve into the evil effects of crime, to urge the fearless enforcement of the criminal laws, or to remark upon the conduct of the accused. (*People v. Brown* (1959), 16 Ill. 2d 482, 158 N.E.2d 579; *People v. Teague* (1966), 66 Ill. App. 2d 338, 214 N.E.2d 522.) On the other hand, we hold that the prosecutor did transcend the bounds of fair argument in stating to the jury that the complaining witness had identified the broken knife recovered from defendant's car as the weapon used in the commission of the offense. Such comment was contrary to the evidence and improper, but in spite of that, we do not feel that it prejudiced defendant inasmuch as prompt objection to the statement was sustained by the trial court. Moreover, defense counsel emphasized the true nature of Patricia Maciejewski's testimony with reference to the broken knife, and the trial court instructed the jury to disregard all argument not based upon the evidence. Under these circumstances the impropriety of the prosecutor's instant remark does not require reversal. *People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389.

Defendant also argues that the prosecutor in his closing argument destroyed the presumption of innocence and shifted the burden of proof to defendant by posing the question in two instances, "if he [defendant] didn't do it [commit the offense], who did?" The remarks came during the prosecutor's summation of circumstantial evidence presented to establish defendant's identity as the offender. In making his assertion defendant has taken the two remarks out of the context in which they were made. They were used to emphasize the prosecutor's argument that defendant's

identity as the offender had been proved beyond a reasonable doubt. Viewed in the proper context of the prosecutor's argument, such remarks did not transcend the bounds of legitimate comment.

Defendant next contends that the trial court erred in denying discovery of statements made to the prosecution by three defense witnesses. At trial defendant moved to discover statements made to an Assistant State's Attorney by Doris Holmes, Albert Holmes and Reverend Thomas Wilson. The prosecutor objected to the disclosure on the ground that the items sought to be discovered were merely brief notations made by the interviewing assistant and that the memoranda were not substantially verbatim reports of the oral statements of the witnesses. After examining the memoranda *in camera* the trial court concluded that they were not substantially verbatim reports of the statements and denied the discovery motion.

Supreme Court Rule 412 (Ill. Rev. Stat. 1971, ch. 110A, par. 412) provides in pertinent part:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> > (i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel memoranda reporting or summarizing oral statements shall be examined by the court *in camera* and if found to be substantially verbatim reports of oral statements shall be disclosed to defense counsel."

■■ Defendant argues that under this rule memoranda of oral statements must be disclosed to the defense without a prior court inspection, unless the prosecution claims that the material contains privileged work product. He cites *People v. Bassett* (1974), 56 Ill. 2d 285, 307 N.E.2d 359, in support of the argument. However, defendant has misconstrued both the requirements of Rule 412 and the holding in *Bassett*. Subsection (a)(i) of the rule clearly provides that upon the written motion of defense counsel, memoranda which reports or summarizes oral statements shall be initially examined by the trial court *in camera* and then disclosed if it is determined by the trial court that the memoranda contain substantially verbatim reports of the oral statements. The rule does not restrict the trial court's examination to merely determining whether the

memoranda contain privileged work product, nor does *Bassett* hold otherwise. There, the prosecution refused to disclose witness cards sought to be discovered by the defendant in the course of his murder trial. Each witness for the State had been interviewed and rough notes taken. Subsequently the notes were transcribed onto white cards in a narrative form as to what each witness had said. In holding that disclosure of the cards to the defendant was required, the Supreme Court held that the cards were by their very nature a reproduction of each witness' statement. The court thus determined for itself that the cards were substantially verbatim reports of each oral statement. While the court stated that disclosure of the cards was still subject to the claim that they contained privileged work product, the court did not hold that a prior *in camera* inspection to determine whether the cards were substantially verbatim reports of the witness' oral statements would have been error. As pointed out in *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593, Rule 412 requires direct disclosure to the defense only if no claim is made that the memoranda does not contain substantially verbatim reports of witness' statements. If that claim is made, an *in camera* examination is necessary.

■■ In the instant case the prosecutor did object to disclosure of the memoranda of the three witnesses' oral statements on that basis. After examining the memoranda *in camera* the trial court determined that it did not contain substantially verbatim reports of those oral statements. Under Rule 412, as well as *Bassett* and *Manley*, this was the proper procedure. Moreover, after examining the memoranda included within the record for appeal purposes, we conclude that the trial court was correct in holding that they were not substantially verbatim reports of the oral statements made. The memoranda consist of brief and extremely rough notes made by the interviewing Assistant State's Attorney on each of the three defense witnesses. In some regards these notes are not even pertinent to the statement of the particular witness being interviewed. It cannot be said that these notes were substantially verbatim reports of the defense witnesses' oral statements or that the trial court erred in denying defendant's discovery motion.

■■ Defendant further contends that the trial court erred in excluding two defense exhibits from evidence. These consisted of the shoes defendant had worn at the time of his arrest and his employee's identification card from Tinley Park Mental Health Center. The trial court rejected the shoes on the basis that the offered introduction was untimely in that they were not listed in defendant's answer to the prosecution's discovery motion. The identification card was rejected on the ground of relevancy. We find that the trial court did not err in excluding either exhibit.

■■ We need not decide whether the trial court was correct in

holding that the offered introduction of the shoes was untimely. A far more obvious reason to exclude the shoes was that they were not relevant, due to their changed condition. Testimony was presented at trial that at the time of defendant's arrest the heel of his left shoe contained a distinctive indentation which was apparent from the imprints it made. Photographs of shoes taken soon after the arrest reflect that they were at that time in a relatively new condition. When offered at trial the shoes were described by the prosecutor as conspicuously old and worn. Before an object such as defendant's shoes is admissible it must be demonstrated that it is in substantially the same condition as it was at the time of the offense, and the trial court must satisfy itself that the object has not been changed in any material aspect. (*People v. Wrona* (1972), 7 Ill. App. 3d 1, 286 N.E.2d 370.) The relevancy of the heel of defendant's left shoe as it existed when offered at trial to the condition of that heel at the time of defendant's arrest is highly questionable. We therefore conclude that the trial court did not abuse its discretion in excluding defendant's shoes from evidence.

■■ Similarly, the trial court did not abuse its discretion in the exclusion of the employee's identification card on the basis of relevancy. Defendant had offered the card in an attempt to impeach the testimony of Officer Hiller as to defendant's explanation of where he had been before he was stopped by the police. Officer Hiller had testified that defendant first told him he was coming from Elgin State Hospital, but later said he was coming from the Corn Products plant in Summit, Illinois. Defendant in turn testified that he told Hiller he had been driving through his old neighborhood, and showed him his employee's identification card. In offering the card into evidence defendant was contradicting Hiller's testimony on a collateral subject. As stated in *People v. Triplett* (1965), 66 Ill. App. 2d 237, 242, 213 N.E.2d 290, "The test of collateralness is: could the fact for which the testimony is offered in contradiction have been shown in evidence for any purpose independent of this contradiction." Here, the place of defendant's employment and whether he told Hiller that at the time of his arrest, were collateral to the main issue in the case; that is, whether defendant was guilty of attempted armed robbery of Patricia Maciejewski. The identification card was not admissible for any purpose independent of the contradiction of Hiller's testimony. Being on a collateral subject, the identification card was irrelevant. The trial court properly rejected its admission into evidence.

■■ Defendant finally contends that he was denied a fair trial by the improper and independent investigation into certain facts by some members of the jury. The allegation was also raised by defendant in his motion for a new trial and was supported by the affidavit of a defense counsel. The defense counsel averred that a named member of the jury

told him after the rendition of the verdict that some members of the jury had visited a Florsheim store and inspected the heel marking on shoes of that brand; and further, that this information was related to the rest of the jury and discussed in their deliberations. During the hearing on the motion for a new trial the same defense attorney stated that in his communications with the jurors he was given the impression that at least some of the jurors had discounted the results of the independent investigation. The trial court denied defendant's motion for a new trial and also denied a motion that the court conduct a hearing to inquire of the jury as to the effects of the independent investigation upon their verdict. We conclude that the trial court did not err in the denial of either motion.

The trial court's attention was first brought to the question of possible jury misconduct by the affidavit of a defense counsel. The affidavit related conversations that the attorney had with a member of the jury; however, the statements of the particular juror could only be confirmed by the affidavit or testimony of that juror. Without the affidavit or testimony of the jury, the alleged misconduct could not be established as having any prejudicial effect upon the verdict. In Illinois it has long been the rule that a jury cannot impeach its verdict by either affidavit or testimony. *People v. Stacy* (1962), 25 Ill. 2d 258, 184 N.E.2d 866; *People v. Curtis* (1972), 7 Ill. App. 3d 520, 288 N.E.2d 35; *People v. Krueger* (1968), 99 Ill. App. 2d 431, 241 N.E.2d 707.

■■ Defendant cites several Federal cases in support of his assertion that his Sixth Amendment confrontation rights take precedence over the restrictive State policy against permitting a jury to impeach its verdict. *Parker v. Gladden* (1966), 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468, held that the Sixth Amendment right of an accused to confront the witnesses against him included the protection against outside influences being exerted upon the jury. However, *Parker* did not address the issue of a State policy which precludes the impeachment of a verdict by the jury. The only decision cited by defendant which did address that issue is *United States v. McMann* (2d Cir. 1967), 373 F.2d 759. There, the court stated it was doubtful whether a restrictive State policy against permitting impeachment of a verdict by a jury would outweigh the Sixth Amendment confrontation right articulated in *Parker*. Subsequent to *McMann*, however, the Illinois Supreme Court passed approvingly upon the restrictive policy against permitting a jury to impeach its own verdict. (*People v. Tobe* (1971), 49 Ill. 2d 538, 276 N.E.2d 294; but *cf. United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232.) Notwithstanding *McMann* and *Bensinger*, the doctrine of *stare decisis* compels us to adhere to the holding of our own State Supreme Court. Decisions of lower Federal courts are not binding on State courts. *People v. Stansberry* (1971), 47 Ill. 2d 541, 544-45, 268 N.E.2d 431, *cert. denied,*

404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121; *People v. Wilson* (1973), 16 Ill. App. 3d 473, 306 N.E.2d 626.) Accordingly, we hold that the trial court did not err in denying the motion to conduct a hearing to inquire of the jury as to the alleged misconduct, nor in denying defendant's motion for a new trial.

For the reasons stated, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.